FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

01 JAN -9 PM 1:58

CLERK. U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

BYUNG CHUL AHN, and
DUCK AHN,

     Plaintiffs,

v.                      CASE NO. 6:00-CV-384-ORL-99A

DORIS MEISSNER, COMMISSIONER
OF THE UNITED STATES IMMIGRATION
AND NATURALIZATION SERVICE, ET.AL.

     Defendants.
_____/

## PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF LAW

COME NOW the Plaintiffs, BYUNG CHUL AHN and DUCK AHN, by and through their undersigned attorneys and submits this their Supplemental Memorandum of Law as required by the Order of this Court dated December 15, 2000 and shows unto the Court that the Plaintiff is still entitled to the relief requested, i.e., a mandamus action compelling the IMMIGRATION & NATURALIZATION SERVICE (INS) to grant DUCK AHN'S Petition for Change of Immigrant Status.

In support of this Memorandum of Law, the Plaintiffs attach hereto and incorporate herein by reference, as Appendix I, an article entitled "Judicial Review of Immigration Cases" appearing in the year 2000 edition of the American Immigration Lawyers Association Immigration and Nationality Law Practice Manual, as Appendix II, a Practice Advisory from the American Immigration Lawyers Association summarizing recent decisions, and as Appendix III, a copy of Karim v. INS, 95 Civ. 510 (CSH), 1999 WL 105037 (S.D.N.Y. 1999).

12

In addition to the discussion of judicial review of immigration cases as shown in the attached Appendices, the Plaintiffs direct this Court's attention to the case of <u>Paunescu v. Immigration & Naturalization Service, et al.</u>, 76 F Supp. 2nd 896 (M.D. Ill. 1999). The Plaintiffs submit that this case, a copy of which is attached hereto and incorporated herein by reference as Appendix IV, is on point and overrides the cases cited by this Court in its Order of December 15, 2000. The Plaintiff further submits that the cases cited by this Court in its Order of December 15, 2000 are distinguishable and not necessarily controlling.

In <u>Paunescu</u>, the District Court held that it had jurisdiction over the alien's mandamus action seeking to compel the INS to process their applications for adjustment of status. This was because the aliens had a right to the adjudication within a reasonable time, the INS had a non-discretionary duty to issue decisions on applications within a reasonable time, and waiting for removal proceedings and raising claims before an Immigration Judge would not be an adequate remedy. <u>Id.</u> at 900-901. See 8 U.S.C.A. Section 1255, INA Section 245, 28 U.S.C.A §1361.

The Plaintiff in <u>Paunescu</u> argued that the statute providing that the Attorney General may adjust an alien's status to that of a lawful permanent resident provides a right to an adjudication within a reasonable time. <u>Id.</u> In <u>Paunescu</u>, the District Court noted that the INS also argued in its motions to vacate and dismiss that various Sections of the Immigration and Nationality Act (INA), specifically 8 U.S.C. § 1252 (g) and § 1252 (a)(2)(B), deprived the District Court of jurisdiction. In <u>Paunescu</u>, the Court noted:

> The court once again rejects defendants' argument that § 1252(g) applies in the instant case. As the court explained in its order denying defendants' motion to vacate, the Supreme Court in *Reno v. American-Arab Anti-Discrimination Committee,* 525 U.S. 471,

119 S.Ct., 936, 142 L.Ed.2d (1999) ("AADC"), held that §
1252(g) applies narrowly to the Attorney General's decision to
"commence proceedings, adjudicate cases, or execute removal
orders." If "[i]t is implausible that the mention of three discrete
events along the road to deportation was a shorthand way of
referring to all claims arising from deportation proceedings," *id.*
525 U.S. 471, 199 S.Ct. at 943, it is even less plausible that the
mention of these discrete events was a shorthand way of referring
to all claims brought in immigration matters. Because this case
does not involve any of the "specific steps in the deportation
process," *id.* 525 U.S. 471, 119 S.Ct. at 944 n. 9, or any aspect
of the deportation process at all, § 1252(g) does not apply. *See
Russell v. INS,* 1999 WL 675255, at *2 (N.D. Ill. Aug. 24, 1999)
("This case challenges denial of a visa petition, and the INS is not
rtying to deport Plaintiff; thus, this case does not fall under the
ambit of the IIRIRA.").

Moreover the <u>Paunescu</u> Court further noted in its opinion as follows:

Section 1252(a)(2)(B) is entitled "Denials of discretionary relief."
Subsection (i) of this section reads, "no court shall have jurisdiction
to review...any judgment regarding the granting of relief under
...§ 1255." 8 U.S.C. § 1252(a)(2)(B)(i). Defendants contend
that the broad language "any judgment" means that this court does
not have jurisdiction to "review" the Attorney General's refusal to
entertain plaintiffs' applications. This argument is flawed in several
respects. Subsection (i) clearly falls under a section of the statute that
discusses *denials* of relief. Were plaintiffs contending that they had
been denied relief, this court likely would not have jurisdiction over
their claims. *See, e.g., Diallo v. Reno,* 61 F.Supp.2d 1361, 1367
(N.D.Ga.1999) (8" U.S.C. § 1252(a)(2)(B)(i) precludes judicial
review of a § 1255 denial of adjustment of status") *Cruz v. INS,*
871 F. Supp. 1049, 1052 (N.D. Ill. 1995) (holding that the plaintiff
was not entitled to judicial review of a denial of adjustment of
status) (citing *Massignani v. INS,* 438 F. 2d 1276 (7th Cir. 1971)).
Because plaintiffs have neither been denied nor granted relief,
§ 1252(a)(2)(B)(i) does not bar jurisdiction.

Moreover, even reading the language of § 1252(a)(2)(B)(i) broadly,
plaintiffs are not asking this court to review any discretionary
judgment regarding the granting of relief. Defendants attempt to
analogize this situation to the "deferred-action" decisions the INS
formerly made in deportation cases (discretionary decisions to
withhold or terminate deportation). The evidence demonstrates
that the INS did not decide to defer action on plaintiffs' applications.
Nor do plaintiffs contend that defendants refused to entertain their

applications.  *See, e.g., Alvidres-Reyes v. Reno,*  180 F.3d 199 (5th
Cir. 1999) (holding that, in the deportation context, § 1252(g)
deprived the court of jurisdiction to compel the Attorney General
to entertain the plaintiffs' applications for suspension of deportation)
(cited by defendants).  Defendants admit that they began entertaining
plaintiffs applications.  Moreover, Teodor attests in his affidavit that
defendants' agent went so far as to tell plaintiffs that their applications
would have been approved on that date if Teodor's fingerprints had
cleared, a statement defendants neither admit nor deny.  From this point
forward, however, defendants simply failed to do anything at all.  This
was not a "decision," let alone a discretionary call.  Plaintiffs do not ask
this court to "review"  a governmental action, but to examine and rectify
a gross inaction.

Finally, the <u>Paunescu</u> Court ruled that it did have mandamus jurisdiction stating:

Because none of the cited provisions of the INS bar jurisdiction,
the court must determine whether it has jurisdiction under the
mandamus statute, 28 U.S.C. § 1361.  This act grants district
courts "jurisdiction of any action in the nature of mandamus
to compel an officer or employee of the United States or any
agency thereof to perform a duty owed to the plaintiff."
Mandamus jurisdiction can be invoked when: (1) the plaintiff
has a clear right to the relief sought; (2) the defendant has a
clear duty to perform; and (3) no other adequate remedy is available.
*Blaney v. United States,* 34 F.3d 509, 513 (7th Cir. 1994).  The
court will address each of these factors.

Then the Court noted that under 8 U.S.C. § 1255 the Attorney General may adjust

an alien's status to that of a lawful permanent residence if the alien applies for such an

adjustment and is eligible for a visa and if such a visa is available to him at the time the

application is filed.  76 F. Supp. at 900.  The Court then wrote:

The court agrees with Judge Grady that § 1255 "provide[s] a
right to an adjudication.... within a reasonable time." *Agbemaple
v. INS,* 1998 WL 292441, at *2 (May 18, 1998).  Defendants
also contend that the INS does not have a clear duty to issue a
decision on an adjustment of status at all, let alone to issue such
a decision before the end of the fiscal year.  *SeeDiallo,* at 1367-78.
As discussed above, the court rejects defendants' argument that
all decisions related to the processing of an application for adjustment
of status are discretionary.  The court does not mean to suggest that
defendants have a duty to adjudicate applications on a "first-come,

first-served basis." *See, e.g., Rahman v. McElroy*, 884 F.Supp. 782, 786-87 (S.D.N.Y. 1995). Defendants nevertheless had a non-discretionary duty to issue a decision on plaintiffs' applications within a reasonable time. *See Yu v. Brown*, 36 F.Supp.2d 922, 931 (D.N.M.1999) ("All other courts addressing this question have held that INS has a *non-discretionary* duty to process applications for LPR status as well as all other immigration applications.") (emphasis added) (citing cases); *id.* at 932 (holding that the INS "owe[s] Plaintiffs a non-discretionary duty to complete processing of Plaintiffs' [LPR] applications in a reasonable time."); *see also* 2 Am.Jur. Administrative Law § 379 ("Even though agency action may be subject to no explicit time limit, a court may compel an agency to act within a reasonable time.") *But see Diallo*, at 1368-69 ("The decision of how to handle and investigate [a plaintiff's] application for adjustment of status and the District Director's denial of that application are clearly discretionary acts.").

Finally, the Paunescu Court rejected the INS contention that the Plaintiffs have an adequate remedy otherwise stating:

> Finally, defendants contend that plaintiffs have an adequate remedy; They can wait until the government institutes removal proceedings against them and raise their claims before the Immigration Judge. The court agrees that this may be the only remedy an alien who is denied an adjustment of status. *See, e.g., Cruz*, 871 F. Supp. at 1052. But, as discussed above, the failure to adjudicate an application is different from the denial of an application. Defendant attempts to analogize the instant case to *Russell v. INS*, 1999 WL 675255 (N.D. Ill. Aug. 24, 1999), in which the plaintiff asked Judge Pallmeyer to issue an order of mandamus against an AAU who had allowed nineteen months to elapse without issuing a decision on Russell's case. Judge Pallmeyer held that the plaintiff had an adequate remedy; to wait until the judge issued his opinion. Following *Russell*, defendant argues that plaintiffs should simply wait until their applications are adjudicated. This suggestion is misguided. The character of the adjudication on Russell's application would not change no matter how long the AAU sat on the case. But the character of the adjudication on plaintiffs' applications changed forever on September 30, 1998 (in violation of this court's order), and this court alone can remedy plaintiffs' injury.

> Judge Vasquez in the District of New Mexico found that the plaintiffs in *Yu v. Brown*, 36 F.Supp.2d 922 (D.N.M. 1999), had established mandamus jurisdiction under nearly identical circumstances to those arise in the instant case. One of the plaintiffs in *Yu* had submitted her application for legal permanent residence two and a half years earlier.

She later learned that her fingerprints had not cleared and refiled her fingerprint card. Judge Vasquez concluded that the defendants, including the INS, had a non-discretionary duty to process the plaintiffs' applications defendants, including the INS, had a non-discretionary duty to process the plaintiffs' applications and held that the defendants had breached this duty by failing to act within a year of the time she refiled her fingerprint card. *See id.* at 933.

Based upon the foregoing considerations the Paunescu Court then concluded that it had mandamus jurisdiction over the instant case and proceeded to rule on the merits in favor of the plaintiffs. Id. at 901-903.

The Plaintiffs in this instant action are owed a non-discretionary duty by the INS to complete the processing of DUCK AHN's application in a timely manner. The Plaintiff, DUCK AHN'S, application should have been completed and he should have been approved for his change of status by the date of his birthday. The evidence in this case clearly shows that the INS knew it had a duty to timely adjudicate and a fact issue decision on the Plaintiff's birthday. This alone shows bad faith and justifies this Court in issuing a Mandamus Order.

The previous cases cited by the Court in this Order of December 15, 2000 are clearly distinguishable. In Cardoso v. Reno, 216 F.3d 512 (5th Cir. 2000) the Plaintiffs illegally entered the United States. There is no suggestion in this case that DUCK AHN has been in illegal status. Consequently, the Cardoso case is clearly distinguishable on its face.

In Diallo v. Reno, 61 F. Supp. 2d 1361 (M.D. Ga. 1999) the alien and his wife were both currently deportable for remaining after their authorization expired. Again, that case is distinguishable. The Plaintiff has been in proper status at all times in this action. There is simply no suggestion in this record that DUCK AHN is not entitled to

the relief requested. The undisputed evidence shows that the family has already been approved for their permanent residence and that DUCK AHN should have had the same non-discretionary adjudication.

Again, in Sadowski v. U.S. I.N.S., 10 F. Supp. 2d 451 (S.D.N.Y. 2000), the Plaintiff did not file an action in the Circuit Court until three years after the Plaintiff had submitted his original I-485. The Plaintiff in this action has acted promptly and has filed all appropriate motions for reconsideration and has otherwise exhausted his administrative remedies.

The Plaintiffs suggest that this matter is controlled by the Paunescu case rather than the Sadowski case.

## CONCLUSION

For the reasons and arguments stated in this Memorandum and the attached articles and case decision, Paunescu, the Plaintiffs request that this Court grant the Plaintiff's Mandamus Action compelling the INS to adjudicate the Plaintiff's request for adjustment of status nunc pro tunc to the date before the Plaintiff's birthday. Waiting for removal proceedings and raising claims for the Immigration Judge would not be an adequate remedy. See Paunescu.

Respectfully submitted this _____ day of January, 2001.

LaVigne, Coton & Associates, P.A.

By: _____
James R. LaVigne, Esq.
5201 Conroy Road, Suite 140
Orlando, Florida 32811
(407) 316-9988
(407) 316-8820 fax
Florida Bar No: 200581

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing has been sent via U.S. Mail Delivery to I. Randall Gold, Assistant United States Attorney, 80 North Hughey Avenue, #201, Orlando, Florida 32801 this _____ day of January, 2001.

_____
James R. LaVigne, Esquire

# JUDICIAL REVIEW OF IMMIGRATION CASES

## I.      INTRODUCTION

The Illegal Immigration Reform and Immigrant Responsibility Act of 1996[1] (IIRAIRA), enacted September 30, 1996, as part of the Omnibus Budget Act signed by President Clinton, included severe restrictions in the area of judicial review.  Immigration and Nationality Act ( INA) §106, the previous basis for federal review of deportation orders, was stricken in its entirety[2] and replaced by the newly amended INA §242 entitled "Judicial Review of Orders of Removal."[3]  IIRAIRA replaced deportation and exclusion proceedings, and their different review procedures, with what are now referred to as "removal proceedings."   The broad restrictions in the 1996 Act constitute a dramatic attempt by Congress to remove the accumulated protections accorded aliens by the federal courts. Nearly four years later, the constitutionality of these new provisions continues to be litigated and interpreted by the courts.

## II.     PROCEDURES GOVERNING JUDICIAL REVIEW

### A.      Petitions for Review

In addition to substantively limiting judicial review, IIRAIRA significantly alters the *procedures* for seeking review in the federal courts.[4]  These new procedures apply to removal proceedings commencing *on or after* April 1, 1997.

#### 1.      *Review of Final Orders*

A federal court may review a final administrative order of removal *only if* (1) all administrative remedies have been exhausted by the alien, and (2) another federal court has not decided the validity of the administrative order, unless the reviewing court finds that the petition for review presents grounds that could not have been presented in the earlier proceeding, or that the remedy provided in that proceeding was inadequate or ineffective to test the validity of the administrative order.[5]

---

[1] Division C of the Omnibus Appropriations Act of 1996 (H.R. 3610), Pub. L. No. 104-208, 110 Stat. 3009 (hereinafter IIRAIRA, the 1996 Immigration Reform Act, or the 1996 Act).

[2] IIRAIRA §306(b).

[3] IIRAIRA §306(a)(2), 8 USC §1252.  Former INA §242 regarding deportation proceedings was amended and renumbered INA §240 "Removal Proceedings."

[4] IIRAIRA §306(a)(2) (amended INA §242(b)), 8 USC §1252(b).

[5] IIRAIRA §306(a)(2) (amended INA §242(d)), 8 USC §1252(d).

713



## 2.    Time Limitations

IIRAIRA requires that all petitions to review final administrative orders of removal must be filed not later than 30 days after the date of the final order.[6]

This is a departure from the previous rule under the Immigration Act of 1990[7] which required that petitions for review to the circuit courts of appeals must be filed within 90 days of issuance of the Board of Immigration Appeals' (BIA) decision (30 days in the case of an aggravated felon) or 60 days if the administrative order was issued following *in absentia* proceedings.[8]

Briefing Deadlines: IIRAIRA requires that an alien *shall* serve and file the Opening Brief in connection with the petition for judicial review not later than *40 days* after the date on which the administrative record is available, and may serve and file a Reply Brief not later than 14 days after service of the government's brief.[9] The statute states that the federal court *may not* extend these deadlines except upon a motion for good cause shown, and that if an alien fails to file a brief within the above periods, the court *shall dismiss* the appeal unless a "manifest injustice" would result.[10]

## 3.    Venue

IIRAIRA requires that a petition for review *shall* be filed with the court of appeals for the judicial circuit in which the *immigration judge completed the removal proceedings*.[11] This provision eliminates the alien's opportunity to "forum shop," as prior to IIRAIRA a petition for review could be filed in *either* the circuit in which the deportation proceedings were held (in whole or in part), or in the circuit where the alien resided.[12]

## 4.    Service

The respondent in a petition for review shall be the Attorney General. The petition must be served on the Attorney General and on the officer or employee of the

---

[6] IIRAIRA §306(a)(2) (amended INA §242(b)(1)), 8 USC §252(b)(1).

[7] Pub. L. No. 101-649, 101 Stat. 4978 (hereinafter IMMACT 90).

[8] Former INA §106(a)(1) (former INA §242B(c)(4)).

[9] IIRAIRA §306(a)(2) (amended INA §242(b)(3)(C)), 8 USC §1252(b)(3)(C).

[10] *Id.*

[11] IIRAIRA §306(a)(2) (amended INA §242(b)(2)), 8 USC §1252(b)(2).

[12] *See, e.g., Michael v. INS,* 48 F.3d 657 (2d Cir. 1995).

INS in charge of the district in which the final order of removal under new INA §240 was entered.[13]

### 5.    *Stay of Removal*

IIRAIRA *eliminates* the *automatic stay* of removal upon service of a petition for review, unless the court orders otherwise.[14]  Prior to IIRAIRA, an automatic stay of deportation attached upon notice of the filing of a petition for review served on the district director of the INS district in which the clerk of the court of appeals was located, except in the case of aggravated felons.[15]  The new law extends elimination of the automatic stay to *all* petitions for review.  Therefore, it is necessary for an alien a petition for review to file a request for a stay of the order of removal pending the court's decision on the petition for review.[16]

Prudent practice dictates that the alien should file a memorandum of law in support of the stay that explains the equities in the case and the issues on appeal.  Note that under IIRAIRA, the federal court *does not* lose jurisdiction if the foreign national is removed.  This is a departure from former INA §106(c), which provided that an order of deportation/exclusion "shall not be reviewed" if the foreign national ceased to be in the United States.

### 6.    *Consolidation of Review*

IIRAIRA includes a provision that requires the petitioner, when seeking a petition for review, to consolidate review of the administrative order with any review sought of a motion to reopen or reconsider the order of removal.[17]

### 7.    *Requirements for Petition*

IIRAIRA requires that a petition for review (or application for writ of habeas corpus) of an order of removal must  (1) contain a copy of the final administrative order, and  (2) identify whether a court has upheld the validity of that administrative order, and if so, identify which court, the date of the court's ruling, and the type of proceeding.[18]  Prudent practice requires that one also review the local rules concerning what other documents, if any, must be attached to the petition for review.

---

[13] IIRAIRA §306(a)(2) (amended INA §242(b)(3)(A)), 8 USC §1252(b)(3)(A).

[14] IIRAIRA §306(a)(2) (amended INA §242(b)(3)(B)), 8 USC §1252(b)(3)(B).

[15] Former INA §106(a)(3).

[16] The Ninth Circuit Court of Appeals has ruled that an automatic stay goes into effect pending the court's ruling on a motion for stay of removal accompanying a petition for review.  *DeLeon v. INS*, 115 F.3d 643 (9th Cir. 1997).

[17] IIRAIRA §306(a)(2) (amended INA §242(b)(6)), 8 USC §1252(b)(6).

[18] IIRAIRA §306(A)(2) (amended INA §242(c)), 8 USC §1252(c).

## III.   BARS TO JUDICIAL REVIEW

IIRAIRA designates proceedings that no longer are subject to judicial review. Generally, the new law removes judicial review of (1) the summary removal provisions found in amended INA §235(b)(1) (except for habeas corpus petitions by aliens asserting lawful permanent resident (LPR) status under amended INA §242(e)), (2) denials of discretionary relief from removal, and (3) orders of removal against criminal aliens.

### A.      Summary Removal

Section 302 of IIRAIRA completely overhauls former INA §235 regarding inspection of aliens by immigration officers.[19]  Included in amended INA §235(b)(1) are provisions for the expedited removal of "inadmissible" aliens arriving at the United States.  The INS port of entry officer has *unrestricted authority* to order an alien removed if the officer determines that the alien does not have the proper documentation, or has made a misrepresentation in attempting to enter the United States (unless the alien indicates an intention to apply for asylum).[20]  Such an order of removal bars the alien from reentering the United States for five years.[21]

IIRAIRA provides that there is *no review* of any individual determination under the summary removal provisions.[22]  Further, IIRAIRA specifically removes any federal jurisdiction over any other cause or claim arising from or relating to the *implementation or operation* of an order of removal under the summary removal provisions.[23]

IIRAIRA also bars judicial review of any decision by the Attorney General to *invoke* the summary removal provisions,[24] or apply the summary removal provisions to individual aliens, including any determination regarding an applicant's "credible fear" of persecution made by an asylum officer at a port of entry.[25]

Finally, IIRAIRA bars any judicial review of the *procedures and policies* adopted by the Attorney General to implement the summary removal provisions found at new INA §235(b)(1).[26]

---

[19]  INA §235 is codified at 8 USC §1225.

[20]  IIRAIRA §302(a) (amended INA §236(b)(2)), 8 USC §1252 (b)(1).

[21]  IIRAIRA §301(b)(1) (amended INA §212(a)(9)(A)(i)), 8 USC §1182(a)(9)(A)(i).

[22]  IIRAIRA §306(a)(2) (amended INA §242(a)(2)(A)(i)), 8 USC §1252(a)(2)(A)(i).

[23]  *Id.*

[24]  IIRAIRA §306(a)(2) (amended INA §242(a)(2)(A)(ii)), 8 USC §1252(a)(2)(A)(ii).

[25]  IIRAIRA §306(a)(2) (amended INA §242(a)(2)(A)(iii)), 8 USC § 1252(a)(2)(A)(iii).

[26]  IIRAIRA §306(a)(2) (amended INA §242(a)(2)(A)(iv)) 8 USC §1252(a)(2)(A)(iv).

1.      *Habeas Corpus Relief and Summary Exclusion*

Orders of removal under the new provisions of INA §235(b)(1) are reviewable only in habeas corpus proceedings where the alien asserts he or she is a lawful permanent resident of the United States.[27] However, federal habeas review of summary removal is *limited to* determinations of (1) whether the petitioner is an alien, (2) whether the petitioner was ordered removed under the new summary removal provisions, and (3) whether the petitioner can prove by a preponderance of the evidence that he or she is an alien lawfully admitted for permanent residence.[28]

a.      Limited Review and Relief

If the federal court in this limited habeas proceeding determines that the petitioner (1) is an alien who was *not* ordered removed under the summary removal provisions of INA §235(b)(1), *or* (2) has demonstrated by a preponderance of evidence that he or she is a lawful permanent resident, has been admitted as a refugee under INA §207, or has been granted asylum under INA §208, the court may *only* order that the petitioner be provided a removal hearing under INA §240 and may not order any further remedy or relief.[29]

b.      No Class Certifications

IIRAIRA bars certification of a class under Rule 23 of the Federal Rules of Civil Procedure for purposes of pursuing a writ of habeas corpus or for purposes of challenging the validity of §235(b) and its implementing regulations as discussed in Part III.A.3 below.[30]

2.      *No Other Relief Available*

Other than the habeas proceedings outlined above and any permissible court challenge to INA §235(b) discussed in Part III.A.3 below, no other federal judicial review of the summary removal provisions may be entertained. IIRAIRA specifically bars any declaratory, injunctive, or other equitable relief in *any action* pertaining to an order to remove an alien under INA §235(b)(1).[31]

---

[27] IIRAIRA §306(a)(2) (amended INA §242(e)(1)(2)), 8 USC §1252(e)(1), (2).

[28] IIRAIRA §306(a)(2) (amended INA §242(e)(2)), 8 USC §1252(e)(2).

[29] IIRAIRA §306(a)(2) (amended INA §242(e)(4)), 8 USC §1252(e)(4).

[30] IIRAIRA §306(a)(2) (amended INA §242(e)(1)(B)), 8 USC §1252(e)(1)(B).

[31] IIRAIRA §306(a)(2) (amended INA §242(e)(1)(A)), 8 USC §1252(e)(1)(A).

3.     *Challenging the Validity of Summary Removal Provisions*

Any challenge to the validity of the summary removal provisions under INA §235(b) must be brought in the United States District Court of the District of Columbia, within *60 days* after the date the challenged section, regulation, directive, guideline, or procedure is first implemented.[32] However, review by the United States District Court for the District of Columbia is limited to determinations of (1) whether INA §235(b), or any implementing regulation, is constitutional, and (2) whether such implementing regulations, written policy directive, policy guideline, or written procedures issued to implement INA §235(b) are inconsistent with other provisions of Title II of the INA or otherwise unlawful.[33]

a.     An appeal by AILA and other nonprofit organizations, challenging this provision days before it went into effect, was dismissed by the Federal District Court for the District of Columbia.[34]

b.     The issue of whether Congress can prevent the federal courts from considering issues of constitutionality by limiting any such review to a 60-day "window" may be litigated.

**B.     Discretionary Relief From Removal**

IIRAIRA specifically bars federal review of *any* decision by the Attorney General with respect to requests for relief that require the exercise of discretion.

1.     *Judicial Review of Specific Relief*

IIRAIRA specifically bars judicial review of any administrative decision relating to waivers of removal under INA §212(h) (certain grounds of inadmissibility), INA §212(i) (fraud/misrepresentation), INA §240A (cancellation of removal), INA §240B (voluntary departure), or INA §245 (adjustment of status).[35]

Note, however, that the language of amended INA §242(a)(2)(B)(i) states that no court shall have jurisdiction to review any judgment "regarding the *granting* of relief" pertaining to the specified waivers of removal. Therefore, it appears that the government also is barred from seeking federal review where such waivers of removal are *granted*.

---

[32] IIRAIRA §306(a)(2) (amended INA §242(e)(3)(A), (B)), 8 USC §1252(e)(3)(A), (B).

[33] IIRAIRA §306(a)(2) (amended INA §242(e)), 8 USC §1252(e)(3)(A).

[34] *AILA v. Reno*, 18 F. Supp 2d. 38 (D.D.C. 1998) (mem.) (decision consists of 64 pages of discussion).

[35] IIRAIRA §306(a)(2); amended INA §242(a)(2)(B)(i), 8 USC §1252(a)(2)(B)(I). Note that the text of amended §212(h) and §212(i) also specifically states that "no court shall have jurisdiction to review" the Attorney General's decision as to these specific waivers. *See* 8 USC §1182(h), (i).

Conversely, it can be argued that courts continue to retain jurisdiction where relief from removal is *denied.*[16]

### 2.     "Catch-All" Provision

IIRAIRA also includes a "catch-all" provision, which provides that there is no federal review of "*any other* decision or action of the Attorney General the authority for which is specified under this title to be in the *discretion* of the Attorney General, other than the grant of asylum under INA §208(a)."[37]

> a.     Note that for this bar to take effect, the Attorney General must have actually *exercised discretion*. Thus, where the Attorney General *fails* to exercise discretion, this bar should not apply. Further, this provision bars review of the Attorney General's discretionary determination and not review of *statutory eligibility* for relief.

> b.     Note that a limited judicial review of asylum decisions under INA §208(a) is provided under this provision as discussed in Part V below.

### C.     Orders Against Criminal Aliens

Judicial review is precluded in almost all cases involving criminal aliens. IIRAIRA bars judicial review of any final order of removal against an alien who is removable for having committed a criminal offense set forth in INA §212(a)(2) (relating to crimes involving moral turpitude (CIMT), controlled substances, multiple criminal convictions, controlled substance traffickers, prostitution and commercialized vice, and certain aliens who assert immunity from prosecution), INA §237(a)(2)(A)(iii) (pertaining to aggravated felons), INA §237(a)(2)(B) (relating to controlled substance violators and drug abusers or addicts), INA §237(a)(2)(C) (firearms offenses), INA §237(a)(2)(D) (relating to miscellaneous crimes), or any offense covered by INA §237(a)(2)(A)(ii) (multiple criminal convictions) for which *both* predicate offenses are otherwise covered by INA §237(a)(2)(A)(i) (relating to CIMTs) *without regard to their date of commission.*

> 1.     Note that aliens who have committed criminal offenses covered under INA §237(a)(2)(A)(ii) are those who have been convicted *at any time after admission* of two or more CIMTs, not arising out of a single scheme of criminal misconduct. However, in order for these aliens to be barred from judicial review, *both predicate* CIMTs must be covered under INA §237(a)(2)(A)(i), which requires that those predicate offenses have been *committed within five years after the date of admission*. Congress initially missed this distinction when it amended §212(c) under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA),[38] and aliens who had committed (non-aggravated felony) CIMTs more than five years after entry were asserting eligibility for §212(c)

---

[36] *See* 74 *Interpreter Releases* 250 (Feb. 1997).

[37] IIRAIRA §306(a)(2) (amended INA §242(a)(2)(B)(ii)), 8 USC §1252(a)(2)(B)(ii).

[38] Pub. L. No. 104-132, 110 Stat. 1214.

relief. Congress discovered this loophole and closed it by inserting the clause *"without regard to their date of commission,"* as to the predicate offenses for purposes of eligibility for judicial review.[19]

### D.    Legalization Claims Under IRCA

Because of the significant delays in adjudicating legalization claims under the Immigration Reform and Control Act of 1986 (IRCA),[40] Congress included a provision in IIRAIRA limiting federal court jurisdiction of class actions under the legalization program to those persons who "in fact filed an application . . . or attempted to file a complete application . . . with an authorized legalization officer of the Service but had the application and fee refused by that Officer."[41] In April 1997, the Ninth Circuit Court of Appeals upheld the constitutionality of this provision and dismissed the reconstituted class in the *Catholic Social Services* (CSS) case.[42] Later, the Court reconsidered and *withdrew* the dismissal,[43] only to again order its dismissal in January 1998.[44] Another case, CSS II, was filed after the CSS case was dismissed, and a preliminary injunction was issued in CSS II on July 2, 1998. The Ninth Circuit suspended the preliminary injunction on August 26, 1998, and again ordered the dismissal of this second class action challenge.[45]

In a different "late amnesty" case, a Los Angeles federal judge issued a permanent injunction ordering the INS to accept legalization applications under IRCA from a group of applicants who tried to file applications in 1987 and 1988, but who were turned away by the government (known as "front-desking").[46] The injunction also orders the continuation of work authorization and stays of deportation for the estimated 26,000 class members. Class members

---

[39] IIRAIRA also removes §212(c) eligibility for aliens asserting that they were not barred from relief because the predicate CIMT offense(s) occurred more than five years after entry. *See* IIRAIRA §306(d), *amending* AEDPA §440(d) (relating to (old) INA §212(c)). At most, this technical amendment to AEDPA would affect only those persons asserting §212(c) claims between AEDPA and the effective date of the new cancellation of removal provisions of IIRAIRA found at amended INA §240A, 8 USC §1229b. Some district courts have held that §212(c) may still be sought in removal proceedings even by those whose crimes antedate the effective date of IIRAIRA. *See e.g. Dunbar v. INS*, No. 99-CV-260, 1999 U.S. Dist. LEXIS 13695 (D. Conn. 1999).

[40] Pub. L. No. 82-414, 66 Stat. 163 (codified as amended at 8 USC §§1101 *et seq.*)

[41] IIRAIRA §377 (amended INA §245(A)(f)(4)(c), 8 USC §1255a(f)(4)(C).

[42] *Catholic Social Services, Inc. v. Reno*, 113 F.3d 922, *withdrawn*, No. 96-15495, 97 Cal. Daily Op. Serv. 3138, 97 Daily Journal D.A.R. 5479 (9th Cir. Apr. 30, 1997).

[43] *Id.*

[44] *Catholic Social Services, Inc v Reno*, No. 96-15495 (9th Cir. Jan. 16, 1998)(slip opinion).

[45] *Catholic Social Services, Inc. v INS*, No.98-16269, 1999 WL 435840 (9th Cir. 1999).

[46] *Newman v. INS*, No. 87-4757 WDK (N.D. Cal. 1999) (formerly known as the *League of United Latin American Citizens*, or "*LULAC*," case).

who believe they were "front-desked" by the INS must file a legalization questionnaire by February 2, 2001.[47]

## IV.   STATUTORY VS. CONSTITUTIONAL HABEAS

The battle over the role of habeas corpus, both in its statutory and constitutional forms, is one of the major issues surrounding judicial review after the passage of the AEDPA and IIRAIRA. The extent to which habeas review is curtailed or eliminated continues to be litigated. It may be years before case law clearly settles the role of habeas within the context of judicial review after IIRAIRA.

### A.   Statutory Habeas Corpus

The statutory acknowledgment of habeas jurisdiction found in former INA §106 was stricken under IIRAIRA. However, IIRAIRA does not speak to the grant of habeas corpus jurisdiction found at 28 USC §2241. Nevertheless, the government has taken the position that the "catch-all" provision of new INA §242(g), discussed in Section X of this article, eliminates 28 USC §2241 as a vehicle for seeking habeas jurisdiction in immigration cases.[48] In other cases, the government has asserted the that habeas jurisdiction under 28 USC §2241 remains to the extent required by the U.S. Constitution.[49]

### B.   Constitutional Habeas

The Suspension Clause of the U.S. Constitution at Article I, Section 9, Clause 2, states that the writ of habeas corpus shall not be suspended except where "in cases of rebellion or invasion the public safety may require it." The circumstances under which constitutional habeas can be asserted under the Suspension Clause of the U.S. Constitution under IIRAIRA will continue to be litigated.

The U.S. Supreme Court had considered the constitutional availability of habeas corpus review for aliens facing exclusion or deportation prior to the incorporation of former INA §106 into the INA. In *Heikkila v. Barber*, the Court determined that Congress had intended to preclude judicial review "to the fullest extent permitted under the Constitution," but that the federal courts retained habeas review under the constitutional minimum as set forth in the Suspension Clause.[50]

---

[47] The legalization questionnaire may be obtained from the INS government Web site at *http://www.ins.usdoj.gov* or found at Appendix I of 76 *Interpreter Releases* (Aug. 9, 1999).

[48] *Mojica v Reno*, 970 F. Supp. 130 (E.D.N.Y. 1997).

[49] *Moore v. District Director*, 956 F. Supp. 878 (D. Neb. 1997).

[50] *Heikkila v. Barber*, 345 U.S. 229, 235 (1953).

C.      **Section 212(c) Review After AEDPA**

Perhaps the most heavily litigated area at this time is judicial review of immigration proceedings for criminal aliens and the availability of relief for criminal conduct. Substantial litigation continues over the applicability of (old) INA §212(c) to lawful permanent residents with convictions or even criminal activity prior to April 24, 1996, the effective date of AEDPA. Section 212(c) was a broad waiver of exclusion (and deportation if there was a comparable ground of exclusion) available to lawful permanent residents, and which IIRAIRA replaced with the much more restrictive Cancellation of Removal provision for lawful permanent residents.[51]

Most circuit courts have held that §440(d) of AEDPA, which barred §212(c) relief, does not apply to deportation cases pending before AEDPA's enactment on April 24, 1996.[52] However, there is a split among the circuits over whether AEDPA's restrictions on INA §212(c) relief apply to those cases initiated *after* April 24, 1996.[53]

# V.      STANDARD OF JUDICIAL REVIEW

In addition to barring judicial review entirely for certain types of proceedings, IIRAIRA restricts the scope and standard of review in those instances where judicial review is provided. In the opinion of the author, the new standard is so restrictive that federal review, where it remains, is reduced to little more than a "kangaroo court."[54] However, these restrictions do not pertain to judicial review of claims of U. S. nationality under amended INA §242(b)(5)(B), which is discussed in Part VIII of this article.

A.      **Scope of Review**

IIRAIRA states that the courts of appeals shall rule on petitions for review based solely upon the administrative record on which the order of removal is based.[55]

---

[51] INA §240A(a), 8 USC §1229a(a).

[52] *Henderson v. Reno*, 157 F.3d 106 (2d Cir. 1998), *cert. denied*, 119 S.Ct. 1141 (1999); *Sandoval v. Reno*, 166 F.3d 225 (3d. Cir 1999); *Mayers v. Reno*, No. 97-5537 (11th Cir. 1999); *Magana-Pizano v. INS*, Nos. 97-15678, 97-70384, 1999 WL 1249703 (9th Cir. 1999); *But see LaGuerre v. Reno*, 164 F. 3d 1035 (7th Cir. 1998).

[53] *DeSousa v. Reno*, No. 99-1115, 1999 U.S. App. LEXIS 20095 (3d Cir. 1999)(relief not barred); *Tasios v. Reno*, No. 99-6061, 2000 U.S. App. Lexis 2878 (4th Cir. 2000) (if AEDPA §440(d) applied to guilty pleas or concessions of deportability made before AEDPA's effective date, it would upset reasonable, settled expectations and change the legal effect of prior conduct. Because Congress has not expressly commanded such retroactive effect, §440(d) is inapplicable to people who pled guilty or conceded deportability before AEDPA was in effect). *Magana-Pizano v. INS*, Nos. 97-15678, 97-70384, 1999 WL 1249703 (9th Cir. 1999) (relief may be available if foreign national can demonstrate that pre-April 24, 1996, plea was entered in reliance on the availability of INA §212(c)).

[54] This term is as "a sham legal proceeding in which a person's rights are totally disregarded and in which the result is a foregone conclusion . . . ." *Black's Law Dictionary* 5th Ed.

[55] IIRAIRA §306(a)(2) (amended INA §242(b)(4)(A)), 8 USC §1252(b)(4)(A).

Under this provision, where the administrative agency refuses the admission of evidence offered by the alien, such evidence may *not* be considered by the courts of appeals *even if* the evidence should have been admitted into evidence.

**B.      Findings of Fact**

IIRAIRA states that the administrative findings of fact are *conclusive* "unless any reasonable adjudicator would be *compelled* to conclude to the contrary."[56]

**C.      Eligibility for Admission**

IIRAIRA states that an administrative decision that an alien is ineligible for admission to the United States is *conclusive* unless *manifestly contrary to law.*[57]

**D.      Review of Asylum Denials**

IIRAIRA mandates that the Attorney General's "discretionary judgment" whether to grant relief in a claim for asylum shall be *conclusive unless manifestly contrary to law and an abuse of discretion.*[58]

## VI.      JUDICIAL REVIEW OF ADMINISTRATIVE REMOVAL

IIRAIRA created new INA §238(b), which allows the INS to administratively order the deportation of a nonlawful permanent resident or conditional permanent resident under INA §216 who has been convicted of an aggravated felony.[59] Under the INA §238(b) procedures, the INS officer issues a form I-851 Notice of Intent to Issue a Final Administrative Removal Order. The foreign national then has 10 days to present a written rebuttal to the notice.[60] The written rebuttal is reviewed by a deportation officer other than the officer who issued the I-851, and who is empowered to issue a final order of removal. Strangely, although INA §238(b) allows the INS to bypass removal proceedings under INA §240, the statute *provides for judicial review* of this INS administrative action directly in a federal circuit court of appeals.[61]

---

[56] IIRAIRA §306(a)(2) (amended INA §242(b)(4)(B)), 8 USC §1252(b)(4)(B).

[57] IIRAIRA §306(a)(2) (amended INA §242(b)(4)(C)), 8 USC §1252(b)(4)(C).

[58] IIRAIRA §306(a)(2) (amended INA §242(b)(4)(D)), 8 USC §1252(b)(4)(D).

[59] Amended INA §238(b), 8 USC §1228(b).

[60] The author was involved in a case where such a notice was issued to an alien. After filing a written rebuttal to the I-851, challenging the INS determination that the foreign national was an aggravated felon, the district director reconsidered and issued a notice to appear placing the foreign national in regular removal proceedings pursuant to INA §240.

[61] INA §§238(b)(4)(E) and 242, 8 USC §§1228(b)(4)(E), 1252.

## VII.   JUDICIAL REVIEW OF JUDICIAL ORDER OF REMOVAL

Congress provided in IIRAIRA that a foreign national who is convicted of a crime in federal court may be ordered removed as part of the *judicial* proceeding.[62]  A person who is ordered removed under this provision may seek judicial review of both the conviction and the order of removal in a federal circuit court of appeals.[63]

## VIII.   JUDICIAL REVIEW OF CLAIMS TO U.S. NATIONALITY

IIRAIRA provides subject matter jurisdiction to a federal court on a petition for review where the petitioning alien claims to be a national of the United States.[64]

### A.   No Genuine Issue of Material Fact

IIRAIRA provides that where the petitioner claims to be a U.S. national and a federal circuit court of appeals finds that, according to the record, no genuine issue of material fact exists regarding the petitioner's nationality, the court of appeals *shall* decide the nationality claim.[65]

### B.   Genuine Issue of Material Fact Regarding Nationality

If the court of appeals determines that a genuine issue of material fact exists about the petitioner's nationality, IIRAIRA *requires* the court to transfer the proceeding to the U.S. district court in the judicial district where the petitioner resides for a hearing on the nationality claim.[66] The district court will hear the action as though it were brought under 28 USC §2201 (relating to declaratory judgments).[67]

## IX.   INJUNCTIVE RELIEF IN FEDERAL COURTS

IIRAIRA places new limits on injunctive relief sought in federal court regarding those sections of the INA pertaining to inspection, admission, expedited removal, apprehension, and detention of aliens.[68]

---

[62] INA §238(d), 8 USC §1228(d).

[63] INA §238(d)(3)(A)(i), 8 USC §1228(d)(3)(A)(i).

[64] Amended INA §242(b)(5), 8 USC §1252(b)(5).

[65] IIRAIRA §306(a)(2) (amended INA §242(b)(5)(A)), 8 USC §1252(b)(5)(A).

[66] IIRAIRA §306(a)(2) (amended INA § 242(b)(5)(B)), 8 USC §1252(b)(5)(B).

[67] *Id.*

[68] IIRAIRA §306(a)(2) (amended INA §242(f)), 8 USC §1252(f).

A.      **Injunctive Relief Generally**

IIRAIRA provides that, except in the case of an individual alien, only the U.S. Supreme Court has jurisdiction to issue an injunction with regard to the operation of any matters covered in Part 4 of Subchapter II of the amended INA (covering INA §§231-236).[69]

B.      **Injunctions Pertaining to the Removal of Individual Aliens**

IIRAIRA bars any court from enjoining the removal of an alien pursuant to a final administrative order *unless* the alien demonstrates by *clear and convincing evidence* that the order of removal is prohibited as a matter of law.[70]

X.      **INA §242(g)**

INA §242(g), added by the 1996 Act, includes a broadly worded provision that, except for those narrow areas where judicial review is specifically provided under amended INA §242, no court shall have jurisdiction to hear any cause or claim by an alien pertaining to a decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal order.[71]  As detailed below, the U.S. Supreme Court and many circuit courts of appeals have held that §242(g) does not have the broad, preclusive sweep that the government has urged.

A.      **Federal Cases Interpreting Court-Stripping Provisions of IIRAIRA**

Several federal circuit courts, as well as the U.S. Supreme Court, have addressed issues regarding the constitutionality of the court-stripping provisions of IIRAIRA and the continuing availability of federal review, including habeas corpus.  These issues will continue to be litigated for years and are far from settled.  AILA maintains and periodically publishes a chart of important federal decisions addressing habeas jurisdiction and retroactivity issues after IIRAIRA.[72]  Below are selected federal court decisions interpreting these provisions, with inconsistent results.

1.      *First Circuit*

In *Goncalves v. Reno*,[73] the respondent was a 25-year lawful permanent resident who was placed in deportation proceedings for having committed crimes involving moral turpitude.  The immigration judge denied (former) INA §212(c) relief

---

[69] IIRAIRA §306(a)(2) (amended INA §242(f)(1)), 8 USC §1252(f)(1).

[70] IIRAIRA §306(a)(2) (amended INA § 42(f)(2)), 8 USC §1252(f)(2).

[71] IIRAIRA §306(a)(2) (amended INA §242(g)), 8 USC §1252(g).

[72] The most recent publication of this chart is found in the January 2000 issue of *AILA Immigration Law Today* (formerly the *AILA Monthly Mailing*).

[73] 144 F.3d 110 (1st Cir. 1998), *cert. denied*, 119 S.Ct. 1140 (1999).

as a matter of discretion. While the case was pending at the BIA, AEDPA was passed. The BIA dismissed the appeal on the grounds that Goncalves no longer was eligible for INA §212(c) relief after AEDPA. Goncalves filed a petition for a writ of habeas corpus in federal district court, which held it had no jurisdiction to hear the habeas case. On appeal, the First Circuit rejected the INS position that the habeas corpus statute found at 28 USC §2241 was repealed by Congress as applied to immigration cases. The Court stated that §2241 jurisdiction could not be repealed by implication, but only by the express command of Congress. The Court went on to state that Congress did not intend to apply the restrictions on INA §212(c) relief retroactively, noting that other provisions of AEDPA expressly were made retroactive and also noting that the final bill failed to include language from the original Senate version that expressly would have made the restrictions retroactive. The Court remanded the case to the BIA for an INA §212(c) ruling on the merits.

**2.     *Second Circuit***

In *Henderson v. INS*,[74] the Second Circuit consolidated four different cases in reviewing whether AEDPA §440(d), restricting (former) INA §212(c) relief, should be applied retroactively. Following the First Circuit's decision in *Goncalves*, the Court determined that AEDPA and IIRAIRA did not change the availability of habeas review of legal defects in deportation orders. Therefore, the Second Circuit determined that habeas review under 28 USC §2241 remains. The Court also agreed with the First Circuit that Congress did not intend for the restrictions on INA §212(c) relief, found in §440(d) of AEDPA, to be applied retroactively. At the time of this writing, the government was seeking a writ of certiorari at the U.S. Supreme Court.

**3.     *Third Circuit***

In *Sandoval v. Reno*,[75] the Third Circuit also found that habeas review survived the 1996 legislation. The Court rejected the INS argument that when it comes to habeas review under 28 USC §2241, the courts are limited only to reviewing substantial constitutional claims. The Third Circuit subsequently reaffirmed that habeas corpus survived the IIRAIRA and AEDPA for transitional cases in *DeSousa v. Reno*.[76] *DeSousa* rejected a broad interpretation of the "catch-all" provision at INA §242(g) that would have barred review for the alien, who had been placed in proceedings in October of 1996.

In *Liang v. INS*,[77] the Third Circuit determined that habeas review remains also under the permanent (non-transitional) cases. The Court held that there is no reason why the jurisdictional ruling under the permanent judicial review rules should be

---

[74] 157 F.3d 106 (2d Cir. 1998), *cert. denied*, 119 S. Ct. 1141 (1999).

[75] 166 F.3d 225 (3d Cir. 1999).

[76] No. 99-1115, 1999 WL 643171, (3d Cir. 1999).

[77] *Liang .v INS*, Nos. 99-5053, 99-5327, 99-6039, 2000 U.S. App. LEXIS 3586 (3d. Cir 2000)

different than it was under the transitional rules. It pointed out that both the transitional and permanent rules refer to habeas jurisdiction or to 28 USC §2241 jurisdiction. The Court held that, as with the transitional rules, a repeal of habeas jurisdiction will not be found by implication.

### 4.     Fifth Circuit

In *Max-George v. Reno*,[78] the Fifth Circuit determined that, while habeas remained under the transitional rules, the permanent jurisdictional limitations described throughout INA §242 are sufficiently explicit to eliminate habeas jurisdiction under 28 USC §2241 in cases in which they apply.[79]

### 5.     Seventh Circuit

In *LaGuerre v. Reno*,[80] the Seventh Circuit held that district courts do not retain habeas jurisdiction under 28 USC §2241 in immigration cases, except in those rare cases in which the alien could not have raised his or her substantial constitutional issue on direct petition to the courts of appeals. The Court accepted the INS position that AEDPA §440(a), which precluded federal review for certain aliens, contains an "exception" allowing direct review of constitutional issues in the courts of appeals. If direct review of a substantial constitutional issue was not allowed, the Court stated that the alien may be able to proceed in the district court under §2241. The Court also determined that AEDPA §440(d), which eliminated (former) INA §212(c), could be applied retroactively to those deportation cases pending when AEDPA was enacted on April 24, 1996. Last, the Seventh Circuit held that there is no equal protection violation in allowing INA §212(c) relief for excludable, but not deportable, aliens.[81]

### 6.     Ninth Circuit

In its first decision in *Magana-Pizano v. INS (Magana-Pizano I)*,[82] the Court held that the "catch-all" bar to judicial review found at INA §242(g) violated the Suspension Clause of the Constitution insofar as the provision denies habeas relief in cases in which no other avenue of judicial review exists. The Court was unable to reach the *Goncalves* Court's finding that, as a matter of statutory construction, 8 USC §2241 statutory habeas

---

[78] *Max-George v. Reno*, No. 98-21090, 2000 U.S. App. LEXIS 2717 (5th Cir. 2000).

[79] To determine whether "the specific conditions exist that bar jurisdiction," then the INS invokes INA §242(a)(2)(C), the court will determine whether the petitioner is (1) an alien, (2) removable, and (3) removable for committing a specific crime. The court has jurisdiction to determine whether these requirements for precluding review have been met. *Id.*

[80] 64 F.3d 1035 (7th Cir. 1998).

[81] *See Matter of Fuentes-Campos*, Int. Dec. 3318 (BIA 1997); *Jurado-Gutierrez v. Greene*, 977 F. Supp 1089 (D. Colo. 1997) (BIA violated petitioner's rights to equal protection in determining that excludable aliens were eligible for former §212(c), but not deportable aliens).

[82] *Magana-Pizano v. INS*, 152 F.3d 1213 (9th Cir. 1998)(*Magana-Pizano I*).

was not repealed. The *Magana-Pizano I* panel was bound by an earlier Ninth Circuit decision in *Hose v. INS*,[83] which had held that INA §242(g) repealed habeas jurisdiction. In December 1998, the Ninth Circuit withdrew the *Hose* decision.

The Ninth Circuit considered its decision in *Magana-Pizano I* on remand from the U.S. Supreme Court.[84] In *Magana-Pizano II*, the Court held that neither the IIRAIRA nor the AEDPA eliminated statutory habeas jurisdiction under 28 USC §2241. The Court held that in cases where it is demonstrated that the alien pled guilty *in reliance* on former §212(c) being available in deportation proceedings, the alien "may be able to establish that AEDPA §440(d) has an impermissible retroactive application as to him."

7.    *Eleventh Circuit*

a.    In *Mayers v. Reno*,[85] the Eleventh Circuit held that the federal courts retain habeas jurisdiction for those whose petitions fall within IIRAIRA's transitional rules, although the Court did not address whether every statutory claim is cognizable in habeas.

b.    In *Richardson v. Reno (Richardson I)*,[86] perhaps the most damaging of the federal decisions on court-stripping, the Eleventh Circuit refused to follow the *Goncalves* (First Circuit), *Henderson* (Second Circuit) and *Magana-Pizano* (Ninth Circuit) decisions, and held that INA §242(g) [the "catch-all bar"] expressly repealed §2241 habeas jurisdiction over immigration decisions under the permanent rules. The Court further held that even if this holding leaves the alien with no judicial review of his detention and removal, the Due Process Clause, Article III, and the Suspension Clause of the U.S. Constitution are not violated.

In June 1999, the U.S. Supreme Court vacated the decision in *Richardson I* and remanded the case in light of *Reno v. American-Arab Anti-Discrimination Committee* [*see* Section X.A.8, below]. In *Richardson II*,[87] the Court again held that the IIRAIRA precludes habeas review of the alien's petition challenging the removal order. The Court noted that the AEDPA's repeal of habeas jurisdiction under former INA §106(a)(10) indicated Congress's intent to remove jurisdiction in such cases. Because of the decision in *American-Arab Anti-Discrimination Committee*, the Court focused on INA §242(b)(9) rather than INA §242(g), which states that review in removal cases needs to be

---

[83] 141 F.3d 932 (9th Cir. 1998).

[84] *Magana-Pizano v. INS*, Nos. 97-15678, 97-70384, 1999 WL 1249703 (9th Cir. Dec. 27, 1999) (*Magana-Pizano II*).

[85] *Mayers v. Reno*, 175 F.3d 1289 (11th Cir. 1999).

[86] 162 F.3d 1338 (11ᵗʰ Cir. 1998).

[87] *Richardson v. Reno*, 180 F.3d 1311 (11th Cir. 1999) (*Richardson II*).

consolidated into review of final orders. This being the case, the Court held that this leaves no room for review under habeas corpus, specifically 28 USC §2241.

### 8.    U.S. Supreme Court

In *Reno v. American-Arab Anti-Discrimination Committee*,[88] the U.S. Supreme Court held that INA §242(g) [the "catch-all bar"] deprives the federal courts of jurisdiction over the aliens' selective-enforcement claim. The aliens asserted that the INS had targeted them for deportation because of their affiliation with and fundraising activities for the Popular Front for the Liberation of Palestine (PFLP), in violation of their First and Fifth Amendment rights. They sought and obtained a preliminary injunction preventing the INS from proceeding with their deportation proceedings. The U.S. Supreme Court held that INA §242(g) restricts judicial review of the Attorney General's decision to "commence proceedings," such as here. Further, the Court held that under IIRAIRA §306(c)(1), INA §242(g) applies to "past or pending" deportation proceedings, and therefore jurisdiction ceased upon the passage of IIRAIRA. In the sole dissent, Justice Souter stated that IIRAIRA §309(c)(1) trumps IIRAIRA §306(c)(1), and therefore pre-IIRAIRA law applies to the proceedings and judicial review. The dissent also voiced its displeasure with the majority's gratuitous holding that an alien may not raise a selective prosecution claim in the immigration context, pointing out that this issue specifically was not briefed before the Court and it was not necessary to reach this issue in light of the majority's position that INA §242(g) ends the matter.

## XI.    CHALLENGES TO THE VALIDITY OF REMOVAL ORDERS IN CRIMINAL PROCEEDINGS

New INA §243(a) sets forth criminal penalties under Title 18 of the U.S. Code for any alien who fails to depart after a final order of removal is issued.[89]

An alien who is in a criminal proceeding for deportation or removal charged under new INA §243(a) may challenge the original order of removal by filing a separate motion before trial in the criminal proceedings. The district court, without a jury, shall decide the motion regarding the validity of the order of removal before trial.[90] The alien may not challenge the validity of the order of removal if the validity of that order has been decided previously by a federal court.[91]

---

[88] No. 97-1252 (U.S. Feb. 24, 1999).

[89] IIRAIRA §307(a) (amended INA §243(a)), 8 USC §1253(a).

[90] IIRAIRA §306(a)(2) (amended INA §242(b)(7)(A)), 8 USC §1252(b)(7)(A).

[91] *Id.*

**A.    Claim of U.S. Nationality to Challenge Order of Removal**

If a defendant charged with violating new INA §243(a) asserts in his or her pretrial motion that he or she is a U.S. national, the district court then must make a determination as to whether a genuine issue of material fact exists regarding the defendant's nationality.

**1.    *No Genuine Issue of Material Fact***

If the district court determines that there is no genuine issue of material fact regarding the defendant's nationality, the court shall decide the nationality claim.[92] The district court only may consider evidence set forth in the administrative record upon which the order of removal was based. The administrative findings of fact surrounding the order of removal are conclusive "if supported by reasonable, substantial, and probative evidence on the record considered as a whole."[93]

**2.    *Genuine Issue of Material Fact Exists***

If the district court determines that there is a genuine issue of material fact regarding the defendant's nationality, the district court must hold a new hearing regarding the assertion of U.S. nationality and render a decision as though the action had been brought before the court pursuant to 28 USC §2201 (relating to declaratory judgments).[94]

It appears that the district court, in determining whether a genuine issue of material fact exists regarding the defendant's nationality, may consider evidence not set forth in the administrative record. The restriction that only the administrative record may be considered applies only *after* the court determines that no genuine issue of material fact exists as to the defendant's nationality.[95]

**B.    Invalidation of Order of Removal**

If the district court, in considering such a challenge, determines that the order of removal is invalid, IIRAIRA provides that the court shall dismiss the criminal indictment under new INA §243(a).[96] The U.S. government may appeal to the court of appeals within 30 days of the district court order.[97]

---

[92] IIRAIRA §306(a)(2) (amended INA §242(b)(7)(B)(i)), 8 USC §1252(b)(7)(B)(i).

[93] *Id.*

[94] IIRAIRA §306(a)(2) (amended INA §242(b)(7)(B)(ii)), 8 USC §1252(b)(7)(B)(ii).

[95] IIRAIRA §306(a)(2) (amended INA §242(b)(7)(B)(i)), 8 USC § 1252(b)(7)(B)(i).

[96] IIRAIRA §306(a)(2) (amended INA §242(b)(7)(C)), 8 USC §1252(b)(7)(C).

[97] *Id.*

## XII.   EFFECTIVE DATES OF JUDICIAL REVIEW PROVISIONS OF THE 1996 ACT

Exactly when these new provisions take effect is confusing at best. Generally, the provisions of IIRAIRA took effect April 1, 1997.[98] One section of the 1996 Act entitled, "Transition for Aliens in Proceedings," states that the judicial review provisions do not apply to aliens in exclusion or deportation proceedings *as of* the date of enactment (September 30, 1996).[99] A technical correction passed on October 4, 1996, replaced the words *as of* with the word *before*, which would affect those persons placed in deportation or exclusion proceedings on September 30, 1996.[100]

### A.   Transitional Rules Regarding Judicial Review of Deportation/Exclusion Proceedings

Another section of IIRAIRA states that final orders of exclusion or deportation entered *more than 30 days* after enactment of IIRAIRA (enacted September 30, 1996), are subject to several of the jurisdictional and procedural changes instituted by the 1996 Act.[101] These "transitional rules" apply to *deportation or exclusion* proceedings in which the final administrative decision occurs *on or after October 31, 1996*.[102] For such cases, the following will apply to any judicial review sought:

- Writs of habeas corpus no longer shall be available to obtain judicial review of orders of exclusion, and review must be sought as though it were from an order of deportation;[103]

- The reviewing court may not order the taking of any additional evidence under 28 USC §2347(c);[104]

- The petition for judicial review must be filed within *30 days* of the final order of exclusion or deportation;[105]

- The petition for review must be filed with the circuit court of appeals for the judicial district in which the immigration judge completed the proceedings;[106]

---

[98] IIRAIRA §309(a).

[99] IIRAIRA §309(c)(1).

[100] 142 Cong. Rec. H12294, Section 2 (1996).

[101] IIRAIRA §309(c)(4).

[102] *Id.*

[103] IIRAIRA §309(c)(4)(A).

[104] IIRAIRA §309(c)(4)(B).

[105] IIRAIRA §309(c)(4)(C).

[106] IIRAIRA §309(c)(4)(D).

- No appeal is allowed from discretionary decisions under (old) INA §212(c), §212(h) [waiver for certain crimes], §212(i) [fraud or misrepresentation], §244 [suspension of deportation], or §245 [adjustment of status];[107]

- No appeal is allowed for criminal aliens who are inadmissible or deportable for having committed an offense covered in (old) INA §212(a)(2) [relating to crimes involving moral turpitude, controlled substances, multiple criminal convictions, controlled substance traffickers, prostitution and commercialized vice, aliens who assert immunity from prosecution], §241(a)(2)(A)(iii) [aggravated felons], §241(a)(2)(B) [relating to controlled substance], §241(a)(2)(C) [firearms offenses], §241(a)(2)(D) [miscellaneous crimes], or §241(a)(2)(A)(ii) [multiple criminal convictions] for which both predicate offenses, *without regard to their date of commission*, are covered by (old) INA §241(a)(2)(A)(i) [crimes involving moral turpitude].[108]

- Service of the petition for review shall not automatically stay the alien's deportation, unless the court orders otherwise;[109]

- Note also that former INA §106(c) remains in effect under the transitional rules, and the federal court does not maintain jurisdiction if the alien is removed from the United States.

## B.      Section 306(c) of IIRAIRA

As if the above were not confusing enough, IIRAIRA also contains a specific subsection regarding the effective dates of the new judicial review provisions.[110]  The provisions of new INA §242, and the repeal of old INA §106, apply to all final orders of deportation/removal and motions to reopen filed *on or after* the enactment of IIRAIRA (September 30, 1996).[111]  Note that this appears to conflict with the provision that the judicial review provisions will not affect aliens in exclusion or deportation proceedings as of September 30, 1996.[112]  A technical correction passed October 4, 1996, clarifies that the new provisions do not affect those in proceedings *before* enactment of the 1996 Act.[113]

---

[107] IIRAIRA §309(c)(4)(E).

[108] IIRAIRA §309(c)(4)(G).

[109] IIRAIRA §309(c)(4)(F).

[110] IIRAIRA §306(c).

[111] IIRAIRA §306(c)(1).

[112] IIRAIRA §309(c)(1) [discussed in the first paragraph of Part XII of this article].

[113] 142 Cong. Rec. H12294, Section 2 (1996).

1.      *Effective Date of "Catch-All" Provision*

However, IIRAIRA also provides that the "catch-all" bar to judicial review found at amended INA §242(g) applies "to any claims arising from all past, pending, or future exclusion, deportation, or removal proceedings" under the INA.[114]

2.      *No Effect on Past Review*

The effective dates of the new judicial review provisions do not invalidate or require the reconsideration of any federal court judgment or order issued under old INA §106.[115]

## XIII.   CONCLUSION

The availability of federal judicial review of immigration proceedings continues to be in a state of flux, and will remain so for years as issues over jurisdiction and retroactivity are litigated. One can only hope that Congress will recognize the chaos that is resulting from these court-stripping provisions and restore former INA §106 to the Act.

---

[114] *Id. See* Part X, *supra.*

[115] IIRAIRA §306(c)(2).

not highlighted: see diallo

# AMERICAN IMMIGRATION LAWYERS ASSOCIATION
## MIDWEST REGIONAL IMMIGRATION LAW CONFERENCE
## MINNEAPOLIS, SATURDAY APRIL 15, 2000

### OUTLINE OF ISSUES FROM IMPORTANT RECENT
### FEDERAL COURT IMMIGRATION CASES

### FOCUSING ON SIXTH, SEVENTH, AND EIGHTH CIRCUITS BUT
### INCLUDING SOME RECENT DECISIONS FROM OTHER CIRCUITS

by Nadine K. Wettstein
American Immigration Law Foundation
Washington, D.C.

## I. INTRODUCTION AND PRACTICE TIP

This article summarizes recent reported federal court immigration decisions. It concentrates on cases in the Sixth, Seventh, and Eighth Circuits, although a few important cases from other circuits and a few district court decisions are included as well. The article is arranged by topic, with the specific circuits' decision listed within that topic.

Many of the cases focus on whether the courts retain jurisdiction to even consider an appeal or a petition for habeas corpus review. There has been a great deal of litigation over this issue during the last three years. Summarized here are only the most recent cases, and primarily from these three circuits.

Courts are only now beginning to consider the IIRAIRA's "permanent" judicial review rules. I have included two such cases, Liang v. INS, __ F.3d __, Nos. 99-5053, 99-5327, 99-6039, 2000 U.S. App. Lexis 3586 (3d Cir. Mar. 9, 2000) and Max-George v. Reno __ F.3d __, No. 98-21090, 2000 U.S. App. Lexis 2717 (5th Cir. Feb. 24, 2000). These two cases reach opposite conclusions regarding whether the IIRAIRA's permanent rules deprive the district courts of habeas corpus jurisdiction under 28 U.S.C. § 2241. Max-George (Fifth Circuit) says IIRAIRA strips courts of habeas corpus jurisdiction; Liang (Third Circuit) says they do not. As far as I know, the Sixth, Seventh, and Eighth Circuits have not decided this issue.

No doubt there will be many more jurisdictional decisions in the months to come. Based on the uncertainty in the law and some of the courts' changes in direction over the last three years (particularly the Seventh Circuit, but also the Eleventh and Fifth), AILF urges all practitioners to strongly consider filing protective petitions for review, even if the circuit law seems to preclude that option. Filing a petition for review is particularly important where you are making constitutional claims, for example, arguing that the statute or INS procedures violate your clients' rights to due process or equal protection.

APPENDIX II

See, in this regard, Max-George (repeatedly stating that had Mr. Max-George filed a petition for review, the court would have had to consider the constitutionality of depriving him of the right to habeas corpus review and other issues).

Note too that the government has conceded in many cases that some review of constitutional claims survives the AEDPA and the IIRAIRA.[ ]  The government's position has shifted too, and currently the government argues that such claims must be brought in the court of appeals. Practitioners may want to indicate on the petition for review (which otherwise is a one-paragraph document) that this is a protective petition for review, being filed because the law is unsettled.

## II. JUDICIAL REVIEW AND HABEAS CORPUS JURISDICTION

**Explanatory Note**

The effect of the AEDPA and IIRAIRA's judicial review amendments was to create three time frames for judicial review:

- Deportation or exclusion orders that became administratively final[ ] before October 31, 1996 are governed by former INA § 106.

- Administratively final deportation and exclusion orders entered by the BIA on or after October 31, 1996—including after April 1, 1997—are governed by the transitional changes in judicial review set out in IIRAIRA § 309(c)(4).

- Removal cases begun on or after April 1, 1997 by issuance of a Notice to Appear pursuant to INA § 239 are subject to the INA § 242.

In other words, deportation and exclusion cases that were pending on April 1, 1997 (old law cases) still are governed by former INA § 106(a). However, that section was amended by the AEDPA and has been impacted by INA § 242(g).

Deportation and exclusion cases in proceedings on April 1, 1997 (old law cases), in which an administratively final order was issued on or after October 31, 1996, are governed by the IIRAIRA transition rules, § 309(c)(4).

Removal proceedings--cases begun on or after April 1, 1997 after issuance of a Notice to Appear--are controlled by INA § 242. INA § 242 does not apply to pre-existing deportation or exclusion proceedings, except for § 242(g).[ ]

**AEDPA § 440(a) - Limitation on Court "Review" of Deport Orders For People Deportable "By Reason Of" Specified Crimes.**

**Sixth Circuit**

Habeas corpus jurisdiction under 28 U.S.C. § 2241 survives § 440(a) limitations on review. Haio v. INS, 199 F.3d 302, 303-05 (6th Cir. 1999); Pak v. Reno, 196 F.3d 666,

672-73 (6th Cir. 1999)

### Seventh Circuit

For the class of noncitizens encompassed by § 440(a), judicial review by means of habeas corpus did not survive the enactment of that section. However, direct review, that is, a petition for review in the court of appeals, remains available to challenge deportation on constitutional grounds. LaGuerre v. Reno, 164 F.3d 1035, 1040 (7th Cir. 1998).

Also, if, for reasons beyond the noncitizen's control, he or she could not have raised a substantial constitutional issue directly in the court of appeals under § 440(a), he or she may be able to proceed in the district court under 28 U.S.C. § 2241 (LaGuerre safety valve) LaGuerre v. Reno, 164 F.3d 1035, 1040 (7th Cir. 1998); Shamsher Singh v. Reno, 182 F.3d 504, 510 (7th Cir. 1999) (one of the "rare cases" where it is appropriate to invoke LaGuerre "safety valve:" pre-LaGuerre law directed him to district court's habeas corpus procedure and he presents a substantial constitutional claim that entitles him to review in the court of appeals); Turkhan v. Perryman, 188 F.3d 814, 824 (7th Cir. 1999) (case law pre-LaGuerre directed Turkhan to the district court rather than the court of appeals, thus this is one of the rare cases anticipated in LaGuerre where habeas corpus review survives); Musto v. Perryman, 193 F.3d 888, 891 (7th Cir. 1999) (acknowledging LaGuerre safety valve; but even had Musto timely filed in the court of appeals, he would not have prevailed).

### Eighth Circuit

Habeas corpus jurisdiction under 28 U.S.C. § 2241 survives § 440(a) limitations on review.

Subsection 440(a) does not remove the district courts' jurisdiction to review cases governed by the IIRAIRA judicial review transition rules. Shah v. Reno, 184 F.3d 719, 723 (8th Cir. 1999).

### Who is "Deportable" -- Convention Against Torture "Trumps" § 440(a)?

### Seventh Circuit

Petitioner's argument that he is not "deportable" for purposes of AEDPA § 440(a) because the Convention Against Torture precludes his return to Liberia is rejected. He committed crimes covered in AEDPA § 440(a). That provision says that a final order of deportation against a person who is "deportable" of reason of having committed a specified criminal offense is not subject to review by any court. The Convention Against Torture does not define who is "deportable" for the purpose of § 440(a). The Convention is not a separate ground of jurisdiction. Diakite v. INS, 179 F.3d 553 (7th Cir. 1999).

### AEDPA § 401(e) - Repeal of INA's Habeas Corpus Jurisdiction

### Sixth Circuit

The AEDPA's repeal of former INA § 106(a)(10) that explicitly provided habeas corpus jurisdiction did not repeal general habeas jurisdiction under 28 U.S.C. § 2241. Section 401(e) says nothing about the general habeas corpus statute, 28 U.S.C. § 2241. Pak v. Reno, 196 F.3d 666, 672-73 (6th Cir. 1999).

## Eighth Circuit

The AEDPA's repeal of former INA § 106(a)(10) that explicitly provided habeas corpus jurisdiction did not repeal general habeas jurisdiction under 28 U.S.C. § 2241. Section 401(e) says nothing about the general habeas corpus statute, 28 U.S.C. § 2241. Shah v. Reno, 184 F.3d 719, 723 (8th Cir. 1999).

## IIRAIRA § 242(g) - Judicial Review "Exclusive Jurisdiction"

### Explanatory Note

Subsection 242(g), unlike the rest of IIRAIRA § 242, applies to past, pending, or future cases, so it may apply to deportation or exclusion cases as well as removal cases.

### Sixth Circuit

Although § 242(g) forecloses review of certain interim discretionary decisions of the Attorney General, it does not preclude review of final orders of deportation. Pak v. Reno, 196 F.3d 666, 671 (6th Cir. 1999).

Among the claims that are not barred by § 242(g), even though they arise from deportation proceedings, are claims of ineffective assistance of counsel in those proceedings. Their challenge is not to the decision or action to "commence proceedings" or "adjudicate cases" or "execute a removal order." Rather, their claim is that their counsel's ineffective performance at their hearing resulted in a deportation order entered against them without due process. The alleged breaches by their attorney took place well before any decision by the Attorney General to execute a removal order. Mustata v. U.S. DOJ, 179 F.3d 1017, 1022-23 (6th Cir. 1999).

A challenge to the right of the Attorney General to detain a person indefinitely when it appears that the deportation order may never be executed did not arise from the Attorney General's "decision or action ... to .. execute removal orders." Therefore, it is not foreclosed by § 242(g). Zhislin v. Reno, 195 F.3d 810, 813-14 (6th Cir. 1999).

### Seventh Circuit

Section 242(g) is not a general preclusion statute; it precludes review of only the three listed discretionary decisions or actions of the Attorney General: to commence proceedings, adjudicate cases, or execute removal orders. Fedorca v. Perryman, 197 F.3d 236, 240 (7th Cir. 1999), following Reno v. American-Arab Anti-Discrimination Committee, 525 U.S. 471, 119 S.Ct. 936, 944 (1999) (AADC) (but holding that Fedorca's challenge to the IJ decision to deny him NACARA relief and the district

director's refusal to issue him a stay of deportation were precluded by § 242(g)).

Section 242(g) does not remove the court's jurisdiction to hear a claim that the mandatory detention provision of the INA, § 236(c), violates due process. Such a claim concerns detention while the administrative process lasts, and it may be resolved without affecting pending deportation or removal proceedings. Parra v. Perryman, 172 F.3d 954, 957 (7th Cir. 1999).

The district court did not have jurisdiction over a suit contesting the INS's decisions: 1) refusing to grant the plaintiffs' request for a stay of deportation; 2) failing to reinstate his administrative grant of voluntary departure; and 3) denying his request for humanitarian parole. In AADC, the Supreme Court "indicated" that a denial of a stay of deportation is not among the actions or decisions to which § 242(g) is inapplicable. The plaintiffs themselves concede that humanitarian parole is relief functionally equivalent to deferred action, one of the types of discretionary decisions the Supreme Court indicated was governed by § 242(g). The plaintiffs failed to suggest any distinctions among deferred action, humanitarian parole, and voluntary departure that would exclude the latter two from the scope of § 242(g) if, as the Supreme Court said, deferred action comes under it. Botezatu v. INS, 195 F.3d 311, 314 (7th Cir. 1999).

**Northern District of Illinois**

Denial of a visa petition has nothing to do with deportation proceedings; § 242(g) does not apply to all claims brought in immigration matters and thus does not deprive the court of jurisdiction to consider the INS's failure to process a Diversity Immigrant Visa application. Paunescu v. INS, 76 F. Supp. 2d 896, 898 (N.D. Ill 1999).

**Eighth Circuit**

Section 242(g) did not repeal general habeas jurisdiction under 28 U.S.C. § 2241. Shah v. Reno, 184 F.3d 719 (8th Cir. 1999).

Section 242(g) "has nothing to do with petitions for review of final orders of deportation, or indeed with any sort of review of such orders," Shah v. Reno, 184 F.3d 719, 722 (8th Cir. 1999) following AADC.

Section 242(g) does not refer to deportation orders but only to certain separate and discrete actions in the deportation process. Reyes-Lechuga v. Reno, 183 F.3d 867 (8th Cir. 1999).

A petition for adjustment of status (AOS) is separate and distinct from any matter related to an order of deportation, therefore § 242(g) does not preclude jurisdiction in a civil suit (not habeas) brought to contest the denial of AOS. Sabhari v. Reno, 197 F.3d 938, 942 (8th Cir. 1999).

**IIRAIRA Judicial Review Transition Rule: No "Appeal" for People Deportable "By Reason Of" Specified Criminal Convictions - IIRAIRA § 309(c)(4)(G)**

**Sixth Circuit**

The court is obligated to interpret IIRAIRA § 309(c)(4)(G) to avoid serious
constitutional problems, including whether the AEDPA and IIRAIRA amendments
suspend the writ of habeas corpus in violation of the Constitution's Suspension Clause.
Choosing to interpret the amendments as preserving access to the writ of habeas corpus
under 28 U.S.C. § 2241 for people in transition cases avoids these constitutional
questions. Therefore, habeas corpus jurisdiction under § 2241 survives both the
AEDPA's amendments and the IIRAIRA's transition rules. Pak v. Reno, 196 F.3d 666,
673 (6th Cir. 1999).

**Eighth Circuit**

IIRAIRA § 309(c)(4)(G) did not repeal general habeas jurisdiction under 28 U.S.C. §
2241. A habeas corpus action in the district court is not an "appeal" and § 309(c)(4)(G)
does not apply. Shah v. Reno, 184 F.3d 719, 723 (8th Cir. 1999); Reyes-Lechuga v.
Reno, 183 F.3d 867 (8th Cir. 1999).

**IIRAIRA Judicial Review Transition Rule for Specified Discretionary Decisions --
IIRAIRA § 309(c)(4)(E).**

**Ninth Circuit**

The BIA denied voluntary departure because it concluded that an undesignated offense
should be designated a felony, and that the respondent therefore was ineligible for
voluntary departure. The BIA's determination was not a discretionary act. Rather, it was
an application of a statutory provision. A determination of per se ineligibility, as the BIA
did here, is not a discretionary matter. Therefore, § 309(c)(4)(E) did not apply and the
court retained jurisdiction. Lafarga v. INS, 170 F.3d 1213, 1215 (9th Cir. 1999).

**IIRAIRA Judicial Review "Permanent" Rule for Noncitizens Removable "By
Reason Of" Enumerated Crimes -- INA § 242(a)(2)(C)**

**Third Circuit**

There is no reason why the jurisdictional ruling under the permanent judicial review rules
should be different than it was under the transition rules. All the provisions use
comparably comprehensive language. All fail to expressly refer to habeas corpus
jurisdiction or to 28 U.S.C. § 2241 jurisdiction in particular. Just as with the transition
rules, a repeal of habeas corpus jurisdiction will not be found by implication. Liang v.
INS, __ F.3d __, Nos. 99-5053, 99-5327, 99-6039, 2000 U.S. App. Lexis 3586 at * 26-
28 (3d Cir. Mar. 9, 2000).

**Fifth Circuit**

Unlike the IIRAIRA transition judicial review rules, which contain "somewhat explicit"
jurisdiction-stripping provisions, the "clear language" of IIRAIRA's permanent rules

precludes 28 U.S.C. § 2241 habeas corpus jurisdiction for review of final removal orders
"for cases that fall within" § 242(a)(2)(C) (see below regarding determining if case falls
within this section). The primary difference between the "transition" and "permanent"
rules is the preclusive language "notwithstanding any other provision of law" in the
permanent rules.  Congress could "theoretically" have been more explicit by specifically
mentioning habeas corpus in general or 28 U.S.C. § 2241 in particular in INA § 242.
Nevertheless, the jurisdictional limitations "described throughout" § 242 [§§ 242(a)(2)(C)
and also 242(b)(9), see below] are sufficiently explicit to eliminate habeas corpus
jurisdiction under § 2241 in cases in which they apply [Note -- in this case both §§ 242(a)
(2)(C) and 242(b)(9) were involved.  Arguably the combination of their effects convinced
the court that withdrawal of habeas corpus jurisdiction was "clear" even though neither
section mentions habeas corpus or 28 U.S.C. § 2241. Also, see below regarding
constitutional inquiry survives] Max-George v. Reno, __ F.3d __, No. 98-21090, 2000
U.S. App. Lexis 2717 at *9-13 (5th Cir. Feb. 24, 2000).

To determine whether "the specific conditions exist that bar jurisdiction," when the INS
invokes § 242(a)(2)(C), the court will determine whether the petitioner is: 1) an alien; 2)
removable; 3) for committing a specified crime.  The court has jurisdiction to determine if
these prerequisites for precluding review have been met. Max-George v. Reno, __ F.3d
__, No. 98-21090, 2000 U.S. App. Lexis 2717 at *14-15 (5th Cir. Feb. 24, 2000), citing
Richardson v. Reno, 180 F.3d 1311, 1315 (11th Cir. 1999), cert denied March 29, 2000
(Richardson II).

**IIRAIRA "Permanent" Restriction on Review of Discretionary Decisions - INA §
242(a)(2)(B)**

**Northern District of Illinois**

This restriction does not apply to a suit challenging the INS's failure to take action on
plaintiffs' applications for adjustment of status based on the Diversity Immigrant Visa
lottery.  Plaintiffs are not contending that they were denied relief -- if they were, the court
likely would not have jurisdiction.  They are not asking the court to "review" any
"decision" or "action" but rather to examine and rectify a gross inaction. Defendants are
incorrect that every decision relating to an application for adjustment of status is
discretionary.  Thus this provision does not deprive the court of jurisdiction. Paunescu v.
INS, 76 F. Supp. 2d 896, 900 (N.D. Ill. 1999).

(but see Diallo v. Reno, 61 F. Supp. 2d 1361 (N.D. Ga. 1999) (§ 242a)(2)(B) precludes
judicial review of a denial of adjustment of status for a Diversity Immigrant Visa
applicant).

**The IIRAIRA "Permanent" Consolidation Rule - § 242(b)(9)**

**Third Circuit**

Section 242(b)(9) clearly expresses Congressional intent that judicial review of questions
arising from a removal proceeding be conducted in the courts of appeals, but it does not
clearly express Congressional intent that the district courts be divested of their habeas
corpus jurisdiction under 28 U.S.C. § 2241.  There must be an explicit statutory reference

to habeas corpus or to 28 U.S.C. § 2241 to effect Congressional intent of repeal. Liang v. INS. __ F.3d __. Nos. 99-5053, 99-5327, 99-6039, 2000 U.S. App. Lexis 3586 at * 32-40 (3d Cir. Mar. 9, 2000)

**Fifth Circuit**

The "clear language" of IIRAIRA's permanent rule forces people to raise all potential issues regarding their removal at one place and time: in a petition for review filed in the court of appeals. "Theoretically" Congress could have been more explicit by specifically mentioning habeas corpus in general or 28 U.S.C. § 2241 in particular in INA § 242. Nevertheless, the jurisdictional limitations "described throughout" § 242 [§§ 242(b)(9) and also 242(a)(2)(C)] are sufficiently explicit to eliminate habeas corpus jurisdiction under § 2241 [Note -- in this case both §§ 242(b)(9) and 242(a)(2)(C) were involved. Arguably the combination of their effects convinced the court that withdrawal of habeas corpus jurisdiction was "clear" even though neither section mentions habeas corpus or 28 U.S.C. § 2241.] Max-George v. Reno, __ F.3d __, No. 98-21090, 2000 U.S. App. Lexis 2717 at *9-13 (5th Cir. Feb. 24, 2000).

**Jurisdiction Via Petition for Review to Determine if Preclusion of Habeas Corpus Review is Constitutional**

**Fifth Circuit**

Notwithstanding the permanent rules, §§ 242(a)(2)(C) and 242(b)(9), restricting habeas corpus review, if a petition for review is filed, the court of appeals retains jurisdiction to determine whether the preclusion of habeas corpus review can be reconciled both with the constitutional limitation on the suspension of habeas corpus and the constitutional guarantee of due process. [The suspension clause: U.S. Constitution, Art. I, § 9 says "The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it"] Max-George v. Reno, __ F.3d __, No. 98-21090, 2000 U.S. App. Lexis 2717 at *18 (5th Cir. Feb. 24, 2000).

**Constitutional Habeas Corpus v. Statutory Habeas Corpus under 28 U.S.C. § 2241**

**Fifth Circuit**

The writ of habeas corpus preserved from suspension in the Constitution is narrower than the writ made available in 28 U.S.C. § 2241. Accordingly, Congress can repeal or supercede § 2241 without violating the Suspension Clause, as long as long as Congress' action does not eliminate the constitutional writ. Max-George v. Reno, __ F.3d __, No. 98-21090, 2000 U.S. App. Lexis 2717 at *18 (5th Cir. Feb. 24, 2000).

**Jurisdiction to Determine if Court Has Jurisdiction**

**Fifth Circuit**

The court has jurisdiction to determine if the specific prerequisites for precluding review have been met. They also retain jurisdiction to determine whether the particular

provisions classifying the petitioner under the jurisdiction-stripping provision (for example, as having committed an "aggravated felony" or a "crime involving moral turpitude") are being constitutionally applied. Max-George v. Reno, __ F.3d __, No. 98-21090, 2000 U.S. App. Lexis 2717 at *14-15, 16 (5th Cir. Feb. 24, 2000), citing Richardson v. Reno, 180 F.3d 1311, 1315 (11th Cir. 1999) (Richardson II)

## Seventh Circuit

As the court has authority to determine jurisdiction, it may review whether the petitioner has committed an aggravated felony. Both its jurisdiction to hear the case and the merits of the appeal turn on that question. Solorzano-Patlan v. INS, __ F.3d __, No. 99-3310, 2000 U.S. App Lexis 3641 at *6-7 (7th Cir. Mar. 10, 2000).

To determine if it has jurisdiction, the court can determine whether the crime of which the petitioner was convicted was correctly characterized by the IJ and INS as an aggravated felony. This jurisdiction also permits the court to rule that the INS may not add additional charges of "aggravated felony" at the court of appeals stage of the proceedings. Xiong v. INS, 173 F.3d 601, 604, 607-608 (7th Cir. 1999).

**Determining Whether the Transitional or Permanent Rules Apply — (Which May Determine Whether Habeas Corpus Review is Available)**

### Eleventh Circuit

Removal [sic] proceedings commenced in June 1995, when the INS served Alanis-Bustamante with an Order to Show Cause (OSC), after having filed a warrant of detainer against him. The proceedings commenced at that time even though the OSC was not served on the respondent at that time. Thus, the proceedings "commenced" long before the INS issued a Notice to Appear under the post-IIRAIRA statute, in June 1997. Hence, the transition judicial review rules IIRAIRA § 309(c)(4) apply, as does Mayers v.U.S. INS, 175 F.3d 1289 (11th Cir. 1999). The permanent judicial review rules of § 242 and Richardson v. Reno, 180 F.3d 1311 (11th Cir. 1999) do not apply. Therefore, habeas corpus review of Alanis-Bustamante's deportation order is available. Alanis-Bustamante v. Reno, 201 F.3d 1303 (11th Cir. 2000). See also Wallace v. Reno, 194 F.3d 279 (1st Cir. 1999).

**IIRAIRA Restriction on Judicial Review of "Discretionary Judgment" Regarding the Application of Mandatory Detention (INA § 236(e))**

### Seventh Circuit

INA § 236(e) -- restricting review of the Attorney General's discretionary judgment regarding the application of INA § 236, governing apprehension and detention -- does not foreclose challenges to the mandatory detention statute itself [INA § 236(c)]. Challenges to the legislation itself are distinct from challenges to decisions implementing that subsection. Those operational decisions are what § 236(e) applies to. Parra v. Perryman, 172 F.3d 954, 957 (7th Cir. 1999).

**IIRAIRA Amendment to INA § 279 (8 U.S.C. § 1329) - Jurisdiction of District Courts**

**Eighth Circuit**

Although the new language IIRAIRA inserted into INA § 279 divests the district courts of some of the jurisdiction they once enjoyed, the amended § 279 does not preclude litigants from invoking alternative bases for subject matter jurisdiction. Sabhari v. Reno, 197 F.3d 938, 942 (8th Cir. 1999) citing Shanti Inc. v. Reno, 36 F. Supp. 2d 1151, 1159 (D. Minn. 1999).

**Habeas Corpus Review - Scope**

**Sixth Circuit**

The district court acting under habeas corpus jurisdiction can order a stay of deportation. It also can review of a final order of deportation, and can order a remand to the BIA for it to reconsider its determination of the factual issue of whether petitioner served five years of his prison sentence. Haio v. INS, 199 F.3d 302, 303-05 (6th Cir. 1999).

**Eighth Circuit**

Habeas corpus review under 28 U.S.C. § 2241 is not limited to constitutional questions but also includes pure questions of law. Shah v. Reno, 184 F.3d 719, 720 (8th Cir. 1999).

**Habeas Corpus Review — Must Petitioner File Petition For Review in Court of Appeals Before Proceeding By Habeas?**

No such requirement indicated in decision: Shah v. Reno, 184 F.3d 719, 720 (8th Cir. 1999); Reyes-Lechuga v. Reno, 183 F.3d 867 (8th Cir. 1999); Pak v. Reno, 196 F.3d 666, 669 (6th Cir. 1999) (filed habeas corpus petition one year after BIA decision); Tasios v. Reno, __ F.3d __, No. 99-6061, 2000 U.S. App. Lexis 2878 (4th Cir. Feb. 28, 2000); Parra v. Perryman, 172 F.3d 954 (7th Cir. 1999).

**Procedure, Petitions for Review**

**Seventh Circuit**

Filing a petition for review of the BIA's denial of a motion for reconsideration [or reopen] does not preserve review of any matters relating to the underlying deportation or removal order. Filing a motion to reconsider [or reopen] does not toll the time for filing a petition for review of a deportation or removal order. That is, a petition for review must be filed within 30 days of an adverse BIA decision, even if a motion to reopen or reconsider has been filed and is pending. Tittjung v. Reno, 199 F.3d 393, 396 (7th Cir. 1999). See also Stone v. INS, 115 S.Ct. 1537 (1995).

**Exhaustion of Administrative Remedies**

**Seventh Circuit**

Certain constitutional due process claims may not require administrative exhaustion because the BIA could not deal dispositively with them. Procedural errors, correctable by the BIA, are examples of matters requiring administrative exhaustion. Shamsher Singh v. Reno, 182 F.3d 504, 511 (7th Cir. 1999).

# III.   OTHER CAUSES OF ACTION AND FORMS OF JURISDICTION

**Mandamus Jurisdiction (28 U.S.C. § 1361), Diversity Immigrant Visas**

**Northern District of Illinois**

The INS had a non-discretionary duty to issue a decision on plaintiffs' Diversity Immigrant Visa applications within a reasonable time. The court rejected INS argument that it does not have a clear duty to issue a decision on an adjustment of status application at all, let alone to issue a decision before the end of the fiscal year. Plaintiffs are entitled to the visas they would have received but for defendants' failure to timely process their applications, notwithstanding defendants' argument that the State Department has no legal authority to issue the visa after the fiscal year. Paunescu v. INS, 76 F. Supp. 2d 896, 901 (N.D. Ill. 1999)

(but see Diallo v. Reno, 61 F. Supp. 2d 1361 (N.D. Ga. 1999) (the decision of how to handle and investigate an application for a Diversity Immigrant Visa adjustment of status is a discretionary act).

**Civil Federal Question Jurisdiction, 28 U.S.C. § 1331, and the Administrative Procedures Act, 5 U.S.C. § 702**

**Eighth Circuit**

Section 1331 is the general grant of civil federal question jurisdiction for actions arising under the Constitution, laws, or treaties of the United States.   For relief against the United States, it must, however, be tied to some additional authority that waives the government's sovereign immunity.  The APA, 5 U.S.C. § 702, provides that waiver and together, grant the district court jurisdiction to consider a suit challenging the denial of adjustment of status.  Sabhari v. Reno, 197 F.3d 938, 942 (8th Cir. 1999).

# IV.   RELIEF FROM DEPORTATION

**AEDPA § 440(d)   (§212(c) relief, Matter of Soriano)**

**Fourth Circuit**

If AEDPA 440(d) applied to guilty pleas or concessions of deportability made before AEDPA's effective date, it would upset reasonable, settled expectations and change the legal effect of prior conduct. Because Congress has not expressly commanded such retroactive effect, § 440(d) is inapplicable to people who pled guilty or conceded deportability before AEDPA was in effect. Tasios v. Reno, __ F.3d __, No. 99-6061, 2000 U.S. App. Lexis 2878 (4th Cir. Feb. 28, 2000).

**Sixth Circuit**

Unlike other parts of AEDPA, § 440(d) does not contain an express statement indicating that it would apply to pending applications. Consequently, it must be presumed that Congress did not intend § 440(d) to apply to pending cases. This is supported by the legislative history. Consequently, § 440(d) does not apply to cases pending on the date AEDPA was "enacted." Pak v. Reno, 196 F.3d 666, 676 (6th Cir. 1999); Haio v. INS, 199 F.3d 302, 305 (6th Cir. 1999).

**Seventh Circuit**

AEDPA § 440(d) applies retroactively to bar covered individuals from seeking a discretionary waiver of deportation under § 212(c) except where the noncitizen conceded deportability before the AEDPA became law and had a colorable defense to deportability. Turkhan v. Perryman, 188 F.3d 814, 827 (7th Cir. 1999), following Reyes-Hernandez, 89 F.3d 490, 493 (7th Cir. 1996) and LaGuerre v. Reno, 164 F.3d 1035, 1041 (7th Cir. 1998).

AEDPA § 440(d) does not violate equal protection. There is a rational and sensible reason for Congress's more lenient treatment of excludable rather than deportable aliens. § 440(d) creates an incentive for deportable aliens to leave the United States voluntarily. That is, if they leave, they may apply for a waiver should they seek to return. LaGuerre v. Reno, 164 F.3d 1035, 1041 (7th Cir. 1998); Chow v. Reno, 193 F.3d 892, 894 (7th Cir. 1999); Musto v. Perryman, 193 F.3d 888, 891 (7th Cir. 1999).

Retroactive application of AEDPA § 440(d) does not violate due process except where the noncitizen conceded deportability before the AEDPA became law and had a colorable defense to deportability. Turkhan v. Perryman, 188 F.3d 814, 827 (7th Cir. 1999); Musto v. Perryman, 193 F.3d 888, 891 (7th Cir. 1999), following Reyes-Hernandez v. INS, 89 F.3d 490, 493 (7th Cir. 1996)

**Eighth Circuit**

Section 440(d) does not apply to persons whose deportation proceedings had already commenced on the date of AEDPA's "enactment." Thus, § 440(d) does not deprive the Attorney General of discretion to waive deportation [under former INA § 212(c)] for people who were in proceedings before AEDPA's date of "enactment." Shah v. Reno,

184 F.3d 719, 720, 724-25 (8th Cir. 1999); Reyes-Lechuga v. Reno, 183 F.3d 867 (8th Cir 1999)

## V.  CRIMINAL ISSUES

**Aggravated  Felony Definition -- Uniform Interpretation**

**Seventh Circuit**

An Illinois conviction is not necessarily a per se "aggravated felony" simply because the defendant was convicted under an Illinois statute entitled "burglary."  "Burglary offense" in INA § 101(a)(43)(G) means "burglary" in its generic sense and must satisfy uniform, basic elements.  There must be a uniform national interpretation of "burglary."  Even the statutes in the states comprising the Seventh Circuit -- Illinois, Indiana, and Wisconsin -- all use different criteria to categorize basically the same conduct.  The INS must look at the charging papers to ensure that these basic elements are satisfied "before it initiates the serious ramifications of removal proceedings based on an alleged "burglary offense."  Solorzano-Patlan v. INS, __ F.3d __, No. 99-3310, 2000 U.S. App Lexis 3641 at *8-15 (7th Cir. Mar. 10, 2000)

**Aggravated Felony Definition -- Individualized Analysis of Conduct**

**Seventh Circuit**

In determining whether a crime should be considered a "crime of violence" and thus an "aggravated felony" under INA § 101(a)(43)(F), 8 U.S.C. § 1101(a)(43)(F), the IJ must make an individualized analysis of whether the conduct carried a substantial risk that force would be used against persons or property.  It is not sufficient for the IJ to limit consideration to the language and title of the statute. Solorzano-Patlan v. INS, __ F.3d __, No. 99-3310, 2000 U.S. App Lexis 3641 at *15-19 (7th Cir. Mar. 10, 2000)

**Aggravated Felony -- IJ Must Look Beyond Language of Statute**

**Seventh Circuit**

The IJ must look beyond the language of the statute to determine whether an offense is a crime of violence and hence an "aggravated felony" under INA § 101(a)(43)(F), 8 U.S.C. § 1101(a)(43)(F).  When the statutory definition of a criminal offense encompasses conduct that does not constitute a crime of violence and conduct that does, an IJ may not simply categorize all conduct covered by the offense as a crime of violence.  The IJ may look at the charging papers -- the indictment or information -- and in some circumstances, may look beyond the charging papers.  Here the IJ was authorized to and should have looked beyond the charging papers, and would have found that what Xiong was convicted of consisted of consensual sex between an eighteen year old and his fifteen-year old girlfriend.  Absent a substantial age difference, this conduct did not, by its nature, involve a substantial risk of physical force. Xiong v. INS, 173 F.3d 601, 605-607 (7th Cir. 1999).

**Aggravated Felony -- Adding Charge at Court of Appeals Stage**

**Seventh Circuit**

The INS may not substitute or add alternative grounds for deportation at the judicial review stage in the proceedings. Briefing and argument before the court of appeals do not give the petitioner sufficient notice and a meaningful chance to be heard as required by the Fifth Amendment. Even though the same conviction underlies the original charge and the amended charge, Xiong was not given an opportunity to challenge its characterization. That is, the IJ found that his conviction for "sexual intercourse with a person under 16" did constitute a crime of violence and thus an aggravated felony. The INS now argues that the conviction constituted "sexual abuse of a minor," also an aggravated felony (INA § 101(a)(43)(A), 8 U.S.C. § 1101(a)(43)(A)). But the IJ was not asked to rule on whether the crime of which Xiong was convicted was "sexual abuse of a minor," and Xiong was not given an opportunity to argue against that characterization. Xiong v. INS, 173 F.3d 601, 607-608 (7th Cir. 1999).

**Aggravated Felony Definition -- Retroactivity**

**Fifth Circuit**

It is not unconstitutionally retroactive for a crime to be classified as an "aggravated felony" now when it was not so classified at the time it was committed or at the time of the conviction. Max-George v. Reno, __ F.3d __, No. 98-21090, 2000 U.S. App. Lexis 2717 at *16-17 (5th Cir. Feb. 24, 2000).

**Illegal Reentry After Conviction for "Aggravated Felony;" "Found" in U.S.**

**Eighth Circuit**

Even though conviction was not considered an "aggravated felony" when committed nor when defendant reentered U.S., the crime of illegal reentry under 8 U.S.C. § 1326 is an on-going offense that continues until an individual is discovered by authorities. An individual can violate § 1326 after being deported by being "found" in the United States without having had permission of the Attorney General to reenter. When an individual is "found" in the United States, the date he or she is found is generally considered to be the date of the violation. Thus, appellant's offense of illegal reentry ended when he was found in Nebraska in 1997 – not when he reentered in 1991. There was no ex post facto violation when the sentencing court applied a 16-level increase on the basis of the prior "aggravated felony" conviction. United States v. Estrada-Quijas, 183 F.3d 758 (8th Cir. 1999)

**Marriage Fraud Prosecution -- Defendant's Knowledge**

**Sixth Circuit**

For the government to prove a violation of the marriage fraud statute -- INA § 275(c), 8

U.S.C. § 1325(c) -- it must show that the defendant knew his conduct was unlawful, but it need not prove that knowledge of the specific law being violated. United States v. Chowdhury, 169 F.3d 402, 406-07 (6th Cir. 1999).

**Prosecution for Illegal Reentry; Collateral Attack on Deportation and Lack of Prior Judicial Review;  Denial of Stay of Deportation - Violation of Due Process**

**Southern District of Indiana**

A civil statute that allows a circuit court to divest itself of jurisdiction over an appeal by denying a stay of deportation may violate the due process clause of the Fifth Amendment by eliminating judicial review of a civil order that subsequently forms the basis of a criminal charge.  Former INA § 106(a)(3), 8 U.S.C. § 1105a(a)(3), said that there would be no automatic stay of deportation upon the filing of a petition for review by a person convicted of an aggravated felony.  Former INA § 106(c), 8 U.S.C. § 1105a(c) said an order of deportation could not be reviewed by the court of appeals after the petitioner was deported.  The Fifth Circuit denied the petitioner's request for a stay while his petition for review was pending, and he was deported immediately.  He subsequently reentered and was prosecuted.  He alleged (unsuccessfully under the facts of the case) that he failed to receive adequate judicial review of his prior deportation orders, in violation of the Fifth Amendment, because the Fifth Circuit denied the stay of deportation. United States v. Anderson, 64 F. Supp. 2d 870 (S.D. Ind. 1999).

**Sentencing Court Recommendation of Deportation — Notice to Defendant**

**Sixth Circuit**

Where a court orders deportation as a part of sentencing, notice and a very detailed procedure are required [see INA § 238(c), Judicial Removal, 8 U.S.C. § 1228(c)]. Where, however, the court merely recommends to the INS that the defendant be deported, the court need not give advance notice to the defendant. United States v. Chowdhury, 169 F.3d 402, 408 (6th Cir. 1999).

## VI. ASYLUM AND WITHHOLDING OF DEPORTATION

**Factual Errors in BIA's Decision - BIA Must Reconsider**

**Seventh Circuit**

Where some of the BIA's assertions of fact have no support in the record, it is impossible to be confident that the petitioner's asylum claim has been fully understood or analyzed and the BIA must consider his application again.  Chitay-Pirir v. INS, 169 F.3d 1079, 1081 (7th Cir. 1999)

**BIA Sua Sponte Changing IJ 's Designation of Country of Deportation**

## Seventh Circuit

The BIA modified the IJ's order to change Kuhai's country of deportation from Uzbekistan to Ukraine.  The BIA said Kuhai could go to Ukraine because she was born there and consequently. she did not have a well-founded fear of persecution in Uzbekistan.  But neither party had briefed whether Kuhai may be eligible for Ukrainian citizenship.  The BIA sua sponte determined that she could return to Ukraine, without allowing either party to address the questions of Ukranian law.  Affirming a deportation order without a fair hearing violates due process.  Kuhai v. INS, 199 F.3d 909 (7th Cir. 1999).

## Fear of Ethnic Persecution Common to All Members of Ethnic Minority (Ethnic Serb from Croatia)

## Seventh Circuit

Petrovic testified unequivocally and without contradiction that his father and sister were fired because of their religion and nationality, and that his father was attacked -- and the authorities refused to investigate -- for the same reason.  Nevertheless, the court majority said the BIA properly found that this was insufficient to establish particularized past persecution or well-founded fear of future persecution.  Fear of general conditions of ethnic persecution common to all members of an ethnic minority does not constitute well-founded fear.  Petrovic v. INS, 198 F.3d 1034, 1037 (7th Cir. 2000) (dissent by Rovner, faulting BIA for "unfounded speculation" that there may be other explanations for the mistreatment of Petrovic's father and sister).

## Living Safely in Home Country Before Fleeing

## Seventh Circuit

That the petitioner could avoid execution by going into hiding and "living a fugitive's life" does not mean he does not have a well-founded fear of persecution.  Chitay-Pirir v. INS, 169 F.3d 1079, 1081 (7th Cir. 1999)

## Changed Country Conditions — Court of Appeals Takes Judicial Notice

## Seventh Circuit

After an appeal had been pending at the BIA for six years, the BIA's decision was based on outdated information.  Because current conditions in Romania are crucial to the decision, the court would take judicial notice of the State Department's most recent Romanian Country Report, which characterizes Romania as a constitutional democracy. Because the court views the petitioner's arguments in light of current country conditions, it finds that his fears of future persecution are unfounded. Teodorescu v. INS, 195 F.3d 970, 973 - 974 (7th Cir. 1999).

## Changed Country Conditions - INS Rebutted Presumption of Future Persecution

**Eighth Circuit**

Even assuming petitioner endured past persecution, the INS successfully rebutted the presumption of future persecution by proving that conditions in Bulgaria had changed. There was substantial evidence to support the BIA's finding that he lacked a well-founded fear of future persecution. Kratchmarov v. Heston, 172 F.3d 551 (8th Cir. 1999).

**Conscription into Military - Not "Well-Founded Fear"**

**Eighth Circuit**

Despite claims of petitioner that if forced to return to Bulgaria he would be conscripted into the military, once again be asked to carry out human rights abuses against other minority groups, and once again be subject to persecution if he refuses, there was substantial evidence to support the BIA's finding that he lacked a well-founded fear of future persecution. The military and court summons he had been issued since his departure from Bulgaria evidence only an attempt by the Bulgarian government to recoup the cost of his police training. Kratchmarov v. Heston, 172 F.3d 551 (8th Cir. 1999).

**"Humanitarian Asylum" - Not Requisite Level of "Atrocity"**

**Eighth Circuit**

Petitioner's request for "humanitarian asylum" based on past persecution would be denied because the incidents he cited did not rise to the requisite level of atrocity. And although there is evidence suggesting that the petitioner may be conscripted upon his return, the remaining chain of events he presents are too speculative to support a claim of future persecution. Kratchmarov v. Heston, 172 F.3d 551 (8th Cir. 1999).

**Inconsistent Testimony, No Pattern of Persecution, Deference to IJ's Credibility Finding**

**Eighth Circuit**

Petitioner did not present specific facts establishing she had been persecuted in Cameroon. Her testimony was inconsistent, she could not remember dates, she submitted two different lists of the names of protesters, and her name was inexplicably out of alphabetical order on each list. Regarding her claim of persecution based on her family name and her family's political opinion, she failed to show a sufficient pattern of persecution justifying an objectively reasonable well-founded fear. Deferring to IJ's credibility finding. Daiga v. INS, 183 F.3d 797 (8th Cir. 1999).

**Testimony Too Vague, Speculative, and Insubstantial**

**Seventh Circuit**

Hindu who gave aid to Moslems during riots in India in 1992-93 testified that he feared to

return to India. He testified that he was beaten several times, that his store was broken into and ransacked, that Hindus protested publicly in front of his store, and that threats were issued to him. He believed the assailants were members of radical Hindu militant groups. Police did nothing when he complained. Later, he was solicited for funds by a radical Hindu political party member and was beaten by an unknown person. His testimony was too vague, speculative and insubstantial to establish either past or future persecution. He was never tortured, arrested, or detained by Hindu militants or police. Beyond his testimony, the record contains no evidence corroborating the beatings or describing the severity of his injuries. There is no evidence his family members have been harmed while he has been in the United States. Unpleasant or even dangerous conditions do not necessarily rise to the level of persecution. Bhatt v. Reno, 172 F.3d 978, 979, 982 (7th Cir. 1999)

**Despite Evidence of Past Persecution, Fear of Future Persecution Not Objectively Reasonable**

**Eighth Circuit**

Although there is evidence that citizen of Laos at one time was victim of persecution -- he spent most of 1981 in a labor camp because of his anti-Communist opinions -- a reasonable fact finder could find his fear of future persecution was not objectively reasonable. After release from the labor camp, he received a degree from a government university, worked for a city government, and obtained a visa and passport. His father and children have been living in Laos without incident. Affirming BIA's denial of asylum and withholding of deportation. Manivong v. District Director, 164 F.3d 432 (8th Cir. 1999).

**"Vague" Testimony - Insufficient Evidence**

**Eighth Circuit**

Petitioner's vague testimony and failure to provide corroborating evidence did not establish that she had been victim of past persecution in Guatemala. It was implausible that guerillas would threaten her based upon her "minor" political activities. A reasonable fact finder could find that her fear of future persecution was not objectively reasonable. Substantial evidence supports the denial of asylum and withholding. Rucu-Roberti v U.S. DOJ, 177 F.3d. 669 (8th Cir. 1999).

**Discrepancies, Inconsistencies, Gaps -- Applicant Not Credible**

**Seventh Circuit**

Syrian Catholic, supported of Christian Phalangist militia and member of Christian militia testified he was captured by the Syrian army and Hezhollah. He alleged he had been kidnapped, beaten and tortured by Syrian forces but failed to mention these events in his asylum application. Also during those years, he visited the United States on six occasions but never sought asylum. He also alleged losses to his business and property holdings during course of Lebanese civil war, but failed to establish those losses were the result of persecution. There were inconsistencies between his and his wife's testimony. The BIA did not make unsupported, blanket statements that it did not believe him, and provided

ample reasons for its disbelief. Malek v. INS, 198 F.3d 1016 (7th Cir. 2000).

## VII.  DETENTION

### Seventh Circuit

INA § 236(c), mandating detention of enumerated classes of deportable or inadmissible noncitizens, does not violate the due process clause of the Fifth Amendment.  Parra v. Perryman, 172 F.3d 954, 958 (7th Cir. 1999).

## VIII.  MISCELLANEOUS MATTERS

### Motion to Reopen, Sua Sponte by BIA

### Ninth Circuit

When determining whether to reopen this deportation case sua sponte pursuant to 8 C.F.R. 3.2(c)(2), the BIA abused its discretion by simply concluding that "the respondent has not demonstrated exceptional circumstances in this case."  The BIA did not consider any of the factors relevant to whether this is an "exceptional" situation or indicate how it arrived at its decision.  It should have considered many factors that weigh heavily in favor of a finding that this situation was "exceptional."  Those factors include that Socop-Gonzalez tried to comply with INS regulations but an INS officer misinformed him on two occasions.  His adherence to the officer's advice is what caused him to withdraw his appeal and miss the deadline for filing a motion to reopen.  He was not represented by counsel at that time.  He is married to a U.S. citizen and the INS has approved his relative visa, indicating the INS believes the marriage is not fraudulent.  There were a "plethora of factors weighing in favor of reopening Socop-Gonzalez's case"  and the BIA abused its discretion in not considering them. Socop-Gonzalez v. INS, __ F.3d __, No. 98-70782, 2000 U.S. App. Lexis 5065 at *3, 20-21 (9th Cir. Mar. 27, 2000).

### Equitable Estoppel Against the Government

### Ninth Circuit

The doctrine of equitable estoppel applies against the government only if it engaged in "affirmative misconduct going beyond mere negligence."  Providing incorrect information and advice or failure to inform an individual of his or her legal rights is not affirmative misconduct.  There must be evidence of "a deliberate lie" or a "pattern of false promises" to establish "affirmative misconduct."  Nevertheless, the facts that the petitioner relied to his detriment on the misinformation given him by an INS officer should have been considered by the BIA when it was deciding whether this was an "exceptional" situation meriting reopening sua sponte.  Socop-Gonzalez v. INS, __ F.3d __, No. 98-70782, 2000 U.S. App. Lexis 5065 at *2, 8-9, 21 (9th Cir. Mar. 27, 2000).

### Stay of Deportation

**Seventh Circuit**

The orderly course of judicial review would be well served if the INS refrained from issuing "bag and baggage" letters to noncitizens facing deportation until after the court of appeals has had a chance to review the proceedings, at least in the cases where the agency itself takes the position that fair grounds for judicial review exist. "This would avoid the shuffle between agency and court that occurs when there is an immediate deportation order followed by an unopposed stay [request]." Sofinet v. INS. 188 F.3d 703, 709 (7th Cir. 1999).

**Special Immigrant Juveniles**

**Sixth Circuit**

Congress did not explicitly state its intent that the 1997 amendments to the Special Immigrant Juvenile statute -- INA § 101(a)(27)(J), 8 U.S.C. § 1101(a)(27)(J) -- adding the requirement that the Attorney General consent to the juvenile court's jurisdiction and to the dependency order, apply retroactively. Therefore, the amendments would not be applied where the state dependency case arose before November 26, 1997. Also, construing § 101(a)(27)(J) to divest state juvenile courts of jurisdiction over juveniles in INS custody is a departure from INS's policies, which is an abuse of discretion and is not entitled to deference. The issue is not moot even though Gao is no longer a juvenile because by he will receive a "meaningful legal benefit" if he is granted Special Immigrant Juvenile status. Gao v. Jenifer, 185 F.3d 548, 553, 557 (6th Cir. 1999).

**Conditional Permanent Residency — Petition to Remove Condition**

**Seventh Circuit**

Substantial evidence supports IJ's decision that there was no intent to enter into a bona fide marriage and BIA adequately reviewed the IJ's decision. There were many inconsistencies between the wife and husband's versions of events, including the year they met, different reasons for their initial break up, and different periods of time the wife was in Thailand for the wedding. They gave false information about their correct addresses and the amount of time they actually lived together. There was no evidence they shared any assets or liabilities. [However, it apparently is undisputed that they did conceive two children, one of whom they both lived with as a family for at least several months]. Nikrodhanondha v. Reno, 202 F.3d 922 (7th Cir. 2000).

**Immigrant Visa -- Valid Marriage at Time of Entry**

**Seventh Circuit**

Under Illinois law, the divorce decree was enforceable on the day the Illinois court issued its judgment. When the petitioner reentered the United States, approximately three weeks later, he was not married to his wife. Therefore, he was not eligible for admission on an immigrant visa based on his marriage to a U.S. citizen. The INS was not required

to rescind his visa before it could be rendered invalid under the divorce judgment. The validity of his visa was contingent upon a valid marriage to a U.S. citizen. Shaikhs v. INS, 181 F.3d 823 (7th Cir. 1999).

**The Holtzman Amendment (INA § 237(a)(4)(D) - Deportation of (Nazi) Persecutors of Others**

**Seventh Circuit**

The Holtzman Amendment mandates deportation of any alien who, between March 1933 and May 1945, under the direction of or in association with the Nazi government of Germany or its allies, participated in the persecution of another person because of race, religion, national origin, or political opinion. The Amendment does not include a fraud element; misrepresentation is not a requirement for deportation under the Amendment. An alien deportable under the Amendment is ineligible for "humanitarian asylum." Tittjung v. Reno, 199 F.3d 393, 397, 398 (7th Cir. 1999).

---

[1] Wright v. Ouellette, 171 F.3d 8, 10 (1st Cir. 1999); Mansour v. INS, 123 F.3d 423, 426 (6th Cir. 1997); Fernandez v. INS, 113 F.3d 1151, 1155 (10th Cir. 1997); Kolster v. INS, 101 F.3d 785, 790, (1st Cir. 1996).

[2] A deportation order becomes final when the BIA affirms the order or when the time to appeal from an immigration judge's order expires without an appeal having been filed, whichever is earlier. INA § 101(a)(47)(B), 8 U.S.C. § 1101(a)(47)(B).

[3] Chow v. Reno, 193 F.3d 892, 893 (7th Cir. 1999).

---

Copyright © 2000, American Immigration Lawyers Association

ct highlighted doc Karim

SHEERIN KARIM and MOHAMMAD KARIM, on behalf of themselves and their three minor children, NOOR KARIM, HOORIA KARIM, and TAMUR KARIM, Plaintiffs, -against- NEW YORK DISTRICT OFFICE of the IMMIGRATION AND NATURALIZATION SERVICE, Defendant.

95 Civ. 510 (CSH)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

February 9, 1997, Decided
February 13, 1998, Filed

DISPOSITION: [*1] Decision of district director reversed. Case remanded to INS for further proceedings.

COUNSEL: For SHEERIN KARIM, MOHAMMAD KARIM, plaintiffs: Kathleen Ann' Daly, Lansing R. Palmer, NY, NY.

For NEW YORK DISTRICT OFFICE OF THE IMMIGRATION AND NATURALIZATION SERVICE, defendant: Pierre M. Gentin.

JUDGES: CHARLES S. HAIGHT, JR., U. S. S. D. J.

OPINION BY: CHARLES S. HAIGHT, JR.

OPINION: MEMORANDUM OPINION AND ORDER

HAIGHT, Senior District Judge:

Plaintiffs Sheerin and Mohammad Karim bring this action on behalf of themselves and their three children to review the denial of their applications for adjustment of status by the New York District Director of the Immigration and Naturalization Service ("INS"). INS moves to dismiss the complaint, asserting first that this Court does not have subject matter jurisdiction and further that the District Director acted according to law and within his proper discretion. Plaintiffs cross-move for summary judgment pursuant to Rule 56, Fed. R. Civ. P., arguing that the denial of their applications was an abuse of discretion and unsustainable as a matter of law.

Background

The Karim family entered the United States of America on October 26, 1990. They [*2] were refugees from Afghanistan who had been living in Pakistan. Through a friend of the family, the Karims obtained false Pakistani passports which they used to board a plane in Pakistan; they flew through several international cities before arriving at JFK Airport in New York. When they arrived in New York, Mohammad Karim immediately told an INS officer that he and wife Sheerin were citizens of Afghanistan, and that their three children had been born in Pakistan. See Amend. Complaint ex. A ("Memo to File" executed by an INS inspector at the airport on Oct. 26). Through an interpreter,

Appendix III

Karim also told the INS inspector on that date that he gave photographs of his family to one Golbadin Lugri, who "assisted me and family by obtaining passports and cleared us for boarding of flight in Islamabad." Id. at ex. B (Affidavit of Mohammad Karim given to INS inspector at JFK on October 26).

Mohammad Karim further described the events of October 26, 1990 in an affidavit dated June 17, 1991, whose pertinent averments INS does not dispute. That affidavit reads in part:

Upon landing, I told the Immigration authorities that we were Afghan refugees. We were brought into the Immigration [*3] room and told to wait. After a time, a Pakistan Airline representative came into the room holding several passports. He called out our name but we did not respond. We were afraid. The Pakistan Airline representative then turned the passports over to the Immigration authorities.

I was then brought forward for questioning. An Urdu translator was also present. The translator was the same Pakistan Airline representative who came into the room with the passports.

Id. at ex. C, PP 45-46. This interpreter translated the questions and answers that appear in the October 26, 1990 affidavit quoted supra.

Because of the fraudulent Pakistani passports, the Karims were placed in exclusion proceedings and paroled into the United States.

In June of 1991, Mohammed Karim filed an application for political asylum on behalf of himself and his family, but this procedure was repeatedly adjourned. In May, 1993, Sheerin Karim obtained a registered nurse's license in New York, and on June 14, 1993 the Foster Nurses Agency's application for an immigrant petition on her behalf was approved by INS. This allowed the family to apply for adjustment of status.

On April 8, 1994, INS notified the [*4] Karims that their applications for adjustment had been denied because they were excludable under 8 U.S.C. Sec. 1182(a)(6)(C), n1 and thus ineligible for adjustment. The Karims moved to reopen the proceedings and also moved for reconsideration. INS declined to reconsider the decision. In January of 1995, the Karims filed this action seeking a declaratory judgment that they had not made any material misrepresentation to a United States official.

Footnotes

n1 That provision states: "Any alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or entry into the United States or other benefit provided under this chapter is excludable." 8 U.S.C. Sec. 1182(a)(6)(C)(i).

End Footnotes

INS then granted the motion to reopen, but again denied the applications to adjust. On this occasion, however, the district director denied the application not only under Sec. 1182(a)(6)(C), but under Sec.Sec. 1182(a)(7)(A) and 1182(a)(7)(B) as well. n2 In addition, the district [*5] director denied the application "in the exercise of [his] discretion" based on the circumstances under which the Karims had entered the country. INS subsequently denied motions to reopen and to reconsider this decision, and the Karims filed their first amended complaint on September 5, 1995.

Footnotes

n2 Section 1182(a)(7)(A) states that any immigrant "who is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter, and a valid unexpired passport, or other suitable travel document . . . is excludable." 8 U.S.C. Sec. 1182(a)(7)(A)(i)(1). Section 1182(a)(7)(B) states that any nonimmigrant who "is not in possession of a valid nonimmigrant visa or border crossing identification card at the time of application for admission is excludable." Id. at Sec. 1182(a)(7)(B)(i)(II).

End Footnotes

INS moves to dismiss the complaint. It argues first that this Court does not have jurisdiction over the claim: no statute specifically extends judicial [*6] review to adjustment of status decisions, and adjustment of status is the "domestic analog" of a consulate's denial of a visa, which has long been regarded as immune from judicial review. INS argues further that even if this Court has jurisdiction, the district director did not abuse his discretion, and additionally had clear statutory grounds to refuse to adjust the Karims' status because the Karims are excludable under the above-cited provisions.

The Karims cross-move for summary judgment, or alternatively, for a remand to the INS. They respond that this Court does have jurisdiction, citing (among other statutes) 8 U.S.C. Sec. 1329. n3 The Karims argue that the district director abused his discretion by not considering all the pertinent information regarding the Karims, and that none of the statutory bases for their exclusion lawfully applies to their family. The Karims assert hat they cannot be excluded under Sec. 1182(a)(6)(C), because they that no willful misrepresentation to a United States official; they cannot be excluded under Sec. 1182(a)(7)(B) because they never attempted to enter as nonimmigrants; and finally, they cannot be excluded under Sec. 1182(a)(7)(A) because although they [*7] did not have the proper papers when they attempted to enter in 1990, this can no longer be held against them in an adjustment of status proceeding.

Footnotes

n3 That provision states that "the district courts of the United States shall have jurisdiction of all causes, civil and criminal, arising under any of the provisions of this subchapter." 8 U.S.C. Sec. 1329.

End Footnotes

On December 18, 1996, the Karims' applications for asylum were finally granted. While this grant of asylum allows the Karims to remain in the United States, it does not grant them the status of permanent legal residents that they would achieve through adjustment.

Discussion

I. Subject Matter Jurisdiction

The Ninth Circuit Court of Appeals has held in no uncertain terms that a district court "has jurisdiction to review a denial of status adjustment." Jaa v. United States INS, 779 F.2d 569, 571 (9th Cir. 1986); see also Chan v. Reno, 113 F.3d 1068, 1071 (9th Cir. 1997) (concluding district court had jurisdiction to review denial of application for adjustment [*8] of status). Other courts have followed suit. See,

e.g., Ijoma v. INS, 854 F. Supp. 612 (D. Neb. 1993); Reid v. INS, 1993 WL 267278 (S.D.N.Y. Nov. 7, 1993).

The Second Circuit, however, has not addressed the specific jurisdictional question raised by this case. In Howell v. INS, 72 F.3d 288 (2d Cir. 1995), the court was faced with an alien who (like the Karims) had been denied an adjustment of status by the district director. INS initiated deportation proceedings against Howell, and she filed suit in district court to review the district director's decision. See id. at 290. The court of appeals held that

the district court lacked jurisdiction to review the district director's denial of Howell's application for adjustment of status once deportation proceedings commenced, because she failed to exhaust her administrative remedies. This exhaustion requirement arises as a result of the administrative remedies available to Howell pursuant to the statutory and regulatory schemes involving adjustment of status. Because deportation proceedings have commenced, Howell has the opportunity, pursuant to the regulations, to renew her application for adjustment of status before [*9] an immigration judge. Thus, Howell must pursue these remedies rather than seek review in the district court pursuant to Sec. 1329.

Id. at 293 (footnote and citation omitted). The Second Circuit reasoned that Howell would be able to appeal an adverse decision of the immigration judge to the Board of Immigration Appeals ("BIA"), and then to the circuit court of appeals. See Chan v. Reno, 916 F. Supp. 1289, 1298-99 (S.D.N.Y. 1996) (discussing various avenues of appeal from denial of application for adjustment of status). In short, the Howell court focused on legal alternatives to relief in the district court.

The Karims' situation is substantially different. To begin with, no deportation proceedings have begun with regard to the Karims. In Howell, the court specifically declined to reach "the question of whether a district court possesses subject matter jurisdiction pursuant to Sec. 1329 to review a district director's denial of adjustment of status when such proceedings have not yet commenced." 72 F.3d at 293 n.5.

Moreover, as stated above, the Karims have been granted asylum; unless that asylum is revoked, deportation proceedings will never be commenced against [*10] them. In Chan, even though deportation proceedings had not yet begun, the district judge determined that the administrative remedies that would ultimately become available to the plaintiffs through deportation proceedings precluded jurisdiction in the district court. Chan, 916 F. Supp. at 1300. In Chan, deportation offered the plaintiffs a form of judicial review; the Karims do not face this procedure.

In fact, the proper INS action even in the absence of asylum would be exclusion, not deportation, proceedings. n4 The parties do not contest that the Karims face exclusion. INS itself states that unlike those facing deportation, the Karims "cannot renew their adjustment applications in their exclusion proceedings." Def. Br. at 21 n.9.

Footnotes

n4 As the Second Circuit has stated, "the difference between deportation and exclusion proceedings is significant because a person who is deemed to have already 'entered' the country can no longer be 'excluded' and is subject to a deportation proceeding in which he or she enjoys greater rights than one who has not entered the country." Dhine v. Slattery, 3 F.3d 613, 617 (2d Cir. 1993).

End Footnotes - [*11]

In Howell, a failure to exhaust the administrative channels of review that remained open to the plaintiff through the deportation procedures precluded jurisdiction in the district court. Those channels are not available to the Karims. Having been granted asylum, deportation will not occur. Even without asylum, the exclusion proceedings the Karim faced did not provide the same avenues for review as does deportation. So the exhaustion logic of Howell simply does not apply.

The immigration and naturalization laws of this nation, as many courts have recognized, form a tangled and intricate web. See, e.g., Randall v. Meese, 272 U.S. App. D.C. 63, 854 F.2d 472, 478 and n.10 (D.C. Cir. 1988). The jurisdiction of the federal courts in this area is uncertain, as the lack of settled law on this question demonstrates. To further complicate matters, a central statutory provision in the jurisdictional scheme, 8 U.S.C. Sec. 1105a, was repealed in 1996. Section 1329 itself was amended recently to substantially reduce its jurisdictional scope; it now grants jurisdiction in the district courts not to all causes "arising under" the subchapter, but only to all actions "brought by the United [*12] States that arise under" the provisions of the United States (emphasis added). As amended, this statute would not provide jurisdiction in this case. However, the effective date of this amendment was September 30, 1996, and all complaints in this action were filed in 1995.

Applying Sec. 1329 as it read in 1995, Howell cannot be read as suggesting that a denial of adjustment of status should never be subject to judicial review; the court, primarily concerned with the exhaustion doctrine, left that question open. INS does not dispute that the Karims have taken every administrative step available to them. Accordingly, I am satisfied that I may follow Ninth Circuit authority and exercise jurisdiction under Sec. 1329. n5

Footnotes

n5 INS also advances the creative argument that adjustment of status is the "domestic analog" of a consular grant of an immigrant visa, and therefore likewise immune from judicial review. I find no support for this argument in the caselaw concerning judicial review of adjustment of status decisions.

End Footnotes - [*13]

II. Discretion of the District Director

In denying the Karims' applications for adjustment of status, the district director stated that his decision was a matter of discretion as well as due to the Karims' statutory ineligibility. Unless this decision constituted an abuse of discretion, the decision must stand. Accordingly, before turning to the statutory arguments I will examine the denial of adjustment as a discretionary decision.

The standard that the Karims must meet in demonstrating an abuse of discretion is an exacting one. The Second Circuit spelled out this standard in Arango-Aradondo v. INS, 13 F.3d 610, 613 (2d Cir. 1994): "We will only find an abuse of discretion where the decision was 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as an invidious discrimination against a particular race or group.'" (quoting Li Cheung v. Esperdy, 377 F.2d 819, 820 (2d Cir. 1967)). "We need only decide whether or not the INS considered the appropriate factors and came to a decision that has any rational basis." Dhine, 3 F.3d at 619.

The Karims argue that the district director failed to consider [*14] all of the appropriate factors. More specifically, they assert that he ignored those positive factors which militated in favor of

adjustment of status: for example, Sheerin Karim's full-time employment as a nurse; the good character and clean record of the Karim family; and the desperate circumstances surrounding the Karims' flight to the United States, which necessitated the use of false documents.

If the district director did consider these factors, he made no record of this consideration. In his letter of April 19, 1995 denying the applications for adjustment of status, his discussion of his discretionary decision consisted of all of one sentence. The district director stated: Moreover, even if any question remained as to your excludability under Section 212(a)(c), n6 the allegations you have made surrounding your procuring of documents and attempted entry into this country are sufficient to warrant a denial of adjustment of status under Section 245 of the Act in the exercise of discretion. Amend. Complaint ex. H.

Footnotes

n6 Now codified as 8 U.S.C. Sec. 1182(a)(6)(C).

End Footnotes - [*15]

From the text of the district director's letter, which represents the only written findings communicated to the Karims, it appears that the discretionary denial of the applications was based solely on one factor: the circumstances surrounding the Karims' entry into the United States involving forged passports. Nowhere does the district director say that this factor outweighed other, positive factors; nowhere does the letter say that there was any balancing that occurred at all.

In Dhine, the Second Circuit made clear that INS must "consider[] the appropriate factors." 3 F.3d at 619. In that case, "the BIA's decision explicitly considers these [positive] factors, and others advanced by Dhine, and finds that they do not outweigh the criminal convictions." Id. at 619-20 (emphasis added). In Zaluski v. INS, 37 F.3d 72 (2d Cir. 1994), the INS properly exercised its discretion where it "fully considered all of [the] arguments, [and] carefully weighed all the equities of the case." Id. at 74. In Arango-Aradondo, no abuse of discretion occurred where INS "carefully and thoughtfully weighed the evidence in Arango's favor . . . against the detrimental evidence." [*16] 13 F.3d at 613. The Second Circuit said in that case that a court is "not empowered to reweigh the evidence" where the evidence had been carefully considered.

But in this case, it does not seem that the evidence was ever truly weighed by the district director. The district director in this case made no reference, explicit or otherwise, to any factors other than the Karims' means of entry. This does not represent the balanced reasoning that must support the exercise of discretion by an officer of the United States. In the words of the Second Circuit, in the context of review of a BIA decision,

When faced with cursory, summary or conclusory statements from the BIA, we cannot presume anything other than such an abuse of discretion, since 'the BIA's denial of relief can be affirmed only on the basis articulated in the decision . . . and we cannot assume that the BIA considered factors that it failed to mention in its decision.'

Anderson v. McElroy, 953 F.2d 803, 806 (2d Cir. 1992) (quoting Mattis v. INS, 774 F.2d 965, 967 (9th Cir. 1985)) (emphasis added); see also Blanco v. INS, 68 F.3d 642, 647 (2d Cir. 1995) (BIA abused its discretion by [*17] not considering the entire record). While perhaps not every factor need be explicitly mentioned, see Douglas v. INS, 28 F.3d 241, 244 (2d Cir. 1994), the failure of the district

director to either mention a single positive factor or discuss any process of balancing or weighing indicates that he abused his discretion.

I do not, by so concluding, hold that INS could not have denied the Karims' applications for adjustment in the proper exercise of its discretion. I only hold that in this case, the district director did not meet the standards that have been set regarding a reasoned and balanced exercise of discretion.

## III. Statutory Eligibility

My determination that the district director abused his discretion by failing to weigh all the appropriate factors in this case does not end the inquiry. The reliance on discretion by the district director was in all likelihood a failsafe measure designed to buttress the primary reason for his decision: the Karims' statutory ineligibility. I now turn to the three bases for ineligibility articulated by the district director.

### 1. Section 1182(a)(7)(A)

The first reason given by the district director for denying the Karims' application was that [*18] at the time of their arrival, they "were not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card (alien registration card), or other valid entry document, and a valid unexpired passport or other travel document. Thus, [they] were, and are, excludable under Section 212(a)(7)(A)(i)(I) n7 of the Act." Amend. Complaint ex. H (emphasis added). The Karims do not dispute that they were excludable under this provision at the time of their entry; they argue, however, that this no longer renders them ineligible for adjustment.

Footnotes

n7 Now codified at 8 U.S.C. Sec. 1182(a)(7)(A)(I).

End Footnotes

8 U.S.C. Sec. 1181 governs the admission of immigrants into the United States; Sec. 1181(a) explains what documents are required for admission. Section 1182 accompanies Sec. 1181, explaining the reasons for which an immigrant may be excluded. Section 1182(a)(7)(A) reiterates the documentation requirements of Sec. 1181(a) in greater detail; an immigrant who does not possess the proper documents may be excluded from [*19] the United States.

Section 1182(a)(7)(A) is the reason the Karims could not enter the United States when they arrived in 1990. They did not "enter" the United States, in the legal sense of the word; they were paroled into the country. See Dhine, 3 F.3d at 617 (distinguishing those who have entered from those who have not entered). However, the Karims are not applying for admission, but for adjustment of status, and the requirements are different.

The regulations governing adjustment of status are set out at Title 8 of the Code of Federal Regulations. 8 C.F.R. Sec. 245.4 clearly states that "the provisions of part 211 of this chapter relating to the documentary requirements for immigrants shall not apply to an applicant under this part." The reasons for this are simple: those applying for an adjustment of status are not seeking admission in the usual sense, but are parolees, asylees, or others who have traveled a different route to residence in the United States. When the Karims first applied for adjustment, Sheerin Karim's employer's petition to INS insured that visas were available for the Karims. The documentation requirements that originally

prevented the Karims from being admitted [*20] do not preclude adjustment of status. This provision does not render the Karims ineligible, and this part of the district director's decision must be reversed as a matter of law. n8

Footnotes

n8 I also note that the language of Sec. 1182(a)(7)(A) differs from other provisions of Sec. 1182 in an important sense. It speaks in the present tense alone, referring to an immigrant "who is not in possession" of certain documents. 8 U.S.C. Sec. 1182(a)(7)(A)(i)(I). Other exclusion provisions use the present and the past tenses. See, e.g., id. at Sec. 1182(a)(6)(E) (referring to an alien "who at any time" engaged in immigrant smuggling); id. at Sec. 1182(a)(6)(C) (referring to an alien who "seeks to procure (or has sought or procured)" documents by fraud); id. at Sec. 1182(a)(1)(D) (referring to an alien who "is or has been" a member of a totalitarian party). This change in language provides further evidence that a lack of documents was not intended to permanently exclude an alien.

End Footnotes

2. Section 1182(a)(7)(B)

The second reason enumerated [*21] by the district director for denying the Karims' applications was that they "were, and are, excludable under Section 212(a)(7)(B) of the Act," which is now codified as 8 U.S.C. Sec. 1182(a)(7)(B). Amend. Complaint ex. H. However, this provision applies only to "nonimmigrants." Each of the Karims is clearly an "immigrant," defined by 8 U.S.C. Sec. 1101(a)(15) to include every alien except those aliens within certain specific exceptions. INS makes no attempt to place the Karims within any of the exceptions, nor could they do so; in fact, INS has all but abandoned this argument in their briefs before this court. Accordingly, this reason for denying the Karims' application must be overturned as a matter of law.

3. Section 1182(a)(6)(C)

The final reason given by the district director for the Karims' statutory ineligibility is that the Karims were excludable under Sec. 1182(a)(6)(C)(i) because, in the words of the district director, they "presented fraudulent documents in an attempt to gain entry into the United States." Amend. Complaint ex. H. This was the original reason given by the district director for denying the applications; the other statutory provisions (and the discretionary component) [*22] were added after the Karims challenged the first denial. The charge of willful misrepresentation is also the most serious against the Karims.

The Karims argue that they never made a misrepresentation to a United States official; although they did use the fraudulent passports to leave Pakistan, they in no way intended to rely on those documents to enter the United States. The Karims' assertions in this regard appear to be fully corroborated by contemporaneous INS documents generated at the time and point of entry.

The BIA, in Matter of D-L- & A-M-, Int. Dec. # 3162 (BIA Oct. 16, 1991) considered a case similar to the case at bar. The immigrants in that case were Cuban refugees, who had utilized forged Spanish passports to board a plane in Spain before arriving in the United States. See id. at 2. The immigration judge found that they were excludable because they used the false passports, but the BIA reversed, stating that an alien is not excludable under section [1182(a)(6)(A)] for seeking entry by fraud or willful misrepresentation of a material fact where there is no evidence that the alien presented or

intended to present fraudulent documents or documents containing [*23] material misrepresentations to an authorized official of the United States Government in an attempt to enter on those documents.

Id. at 6. Because the applicants "surrendered the false document to United States immigration officials, immediately revealed their true identity, and asked to apply for asylum," their actions did not provide a proper basis for exclusion. Id. at 6-7.

Similarly, in Matter of Y-G-, Int. Dec. # 3219 (BIA May 5, 1994), the BIA determined that even though the alien had used a false passport to arrive in the United States, because he "gave his real name, stated that the documents he possessed were not his own," and was otherwise forthright with the officials, no misrepresentation had occurred. Id. at 6. In addition, Y-G- instructs that because the consequences of exclusion under this provision may "perpetually bar" an applicant from admission, the factual basis for such an exclusion must be "closely scrutinized." Id. at 5 (citing Matter of Shirdel, 19 I & N Dec. 33 (BIA 1984)).

These decisions control the case at bar. The Karims possessed fraudulent Pakistani passports. However, upon their arrival in the United States, Mohammad [*24] Karim told the officials that he was a citizen of Afghanistan. This clear renunciation of the Pakistani passports was documented in the INS Inspector's Memo to File. See Amend. Complaint ex. A ("Karim claims to be citizen of Afghanistan."). In a sworn affidavit given on the day of his arrival Mohammad Karim gave his true name, gave Afghanistan as his country of citizenship, and stated his purpose to enter the country as a refugee. See Amend. Complaint ex. B. This is hardly the behavior of an alien who intends to enter the country on the strength of false documents.

The district director attempted to distinguish these precedents, stating that the Karims "did not concede upon entry that these fraudulent Pakistani passports were [their] means of attempting to enter this country." Amend. Complaint ex. H. However, the Karims, who did not speak English and were forced to speak through a translator using a second language, cannot be charged with misrepresentation solely because they failed to renounce their false documents as articulately as others might have. Mohammad Karim stated his true name, his true citizenship, and his true status as a refugee. At no time did the Karims [*25] claim that the passports were their own.

Exclusion under the misrepresentation provision requires "subjective intent" on the part of the alien, involving willful, deliberate behavior. See Garcia v. INS, 31 F.3d 441, 443 (7th Cir. 1994) (citing Suite v. INS, 594 F.2d 972, 973 (3d Cir. 1979)). The Karims' behavior upon entering this country simply cannot be characterized as a deliberate attempt to enter the United States through fraud or misrepresentation of a material fact. Accordingly, the decision of the district director must be reversed on this basis as well. It is clearly inconsistent with both BIA and other precedents. n9

Footnotes

n9 In general, considerable deference is afforded to immigration decisions; of course, review in the federal courts usually occurs after review by both an immigration judge and the BIA, not directly from the decision of a district director. Neither party briefed the issue of what the proper standard of review should be in this case, and the question is by no means clear; given the irregular procedural posture of this case, there is a paucity of precedent for review of a district director's decision by a district court. It is not necessary for me to decide this question, however, because even under the most deferential of standards, the decision of the district director with regard to statutory ineligibility must be reversed.

End Footnotes - [*26]

The Karims are statutorily eligible for adjustment of status. If the district director once again rules on the Karims' applications in the exercise of his discretion, that exercise must conform to governing law.

Conclusion

For the reasons stated above, the decision of the district director is reversed. The case is remanded to the INS for further proceedings consistent with this opinion.

It is SO ORDERED.

Dated: New York, New York
February 9, 1997
CHARLES S. HAIGHT, JR.
U. S. S. D. J.

---

Copyright © 1999, American Immigration Lawyers Association



**896**        **76 FEDERAL SUPPLEMENT, 2d SERIES**

were one, or that K & N could somehow silently bind Nacora as a fiduciary to Tall Ships. The fiduciary relationship, if any, lies between Tall Ships and K & N.

### C. Negligence

[13]   To state a cause of action for negligence, the plaintiff must show that the defendant owed it a duty of care, that the defendant breached that duty, and that the breach was the proximate cause of the plaintiff's injury. *See Mt. Zion State Bank & Trust v. Consol. Communications, Inc.*, 169 Ill.2d 110, 214 Ill.Dec. 156, 660 N.E.2d 863, 867 (1996). Here, even if Tall Ships could demonstrate that Nacora owed it a duty, Tall Ships would not prevail because it cannot show that Nacora's failure to procure insurance was the proximate cause of Tall Ships' loss.

As we held above, Tall Ships' loss occurred outside of the terms of the standard marine cargo policy and, thus, was not covered by that policy. Tall Ships presents no evidence that it requested coverage beyond that provided by the standard marine policy. Thus, even if Nacora had a duty to obtain insurance for Tall Ships, it would not have been under any duty to obtain extraordinary coverage. Because Nacora would have gotten the same type of insurance that K & N did in fact obtain, Tall Ships loss would not have been covered under a Nacora-obtained policy either. Therefore, Tall Ships cannot show that Nacora's failure to obtain insurance caused its loss.

Thus, there is no genuine issue of material fact that Nacora is liable for Tall Ships' losses, and we grant Nacora's summary judgment motion.

### CONCLUSION

For the foregoing reasons, K & N's partial summary judgment motion is denied. (R. 56–1.) We grant in part and deny in part Blue Anchor's summary judgment motion. (R. 66–1.) We grant the

summary judgment motions of Fireman's and Nacora. (R. 70–1; R. 59–1.)

Also pending are motions by Fireman's and Nacora to strike portions of Tall Ships' response briefs for failing to comply with the local rules and for violating counsel's ethical obligations, and a motion by Tall Ships to strike Nacora's motion to strike. Although the defendants' points are well taken, given our ruling, their motions are denied. (R. 98–1; R. 102–1.) Tall Ships' motion to strike is dismissed as moot. (R. 112–1.) However, we admonish in the strongest possible terms Tall Ships' attorneys to alter their litigation strategy—particularly their use of inflammatory and wholly inappropriate characterizations of the defendants [2] in lieu of well-reasoned legal positions—or face possible future sanctions.

A final pretrial order in this case will be due on January 5, 2000. The remaining issues in this lawsuit are hereby set for trial on January 24, 2000, at 10:00 a.m. A status hearing will be held in open court on December 21, 1999 at 9:45 a.m.



Teodor G. PAUNESCU and Lelia A. Paunescu, Plaintiffs,

v.

IMMIGRATION & NATURALIZATION SERVICE, Brian Perryman, District Director, Chicago, Ins, and United States of America, Defendants.

No. 98 C 5971.

United States District Court,
N.D. Illinois,
Eastern Division.

Dec. 2, 1999.

Aliens brought action for mandamus and declaratory judgment seeking to com-

---

2.   For example, Tall Ships compares one of Nacora's officers to a Nazi minimizing the

Holocaust during the Nuremberg Trials  (R. 87–2, Tall Ships' Resp. Mem. at 6.)

*Appendix IV*

pel Immigration and Naturalization Service (INS) to execute and process their applications for adjustment of status pursuant to Diversity Immigrant Visa Program. On cross-motions for summary judgment, the District Court, Gettleman, J., held that. (1) statute precluding court jurisdiction to hear claim arising from decision or action by Attorney General to commence proceedings, adjudicate cases, or execute removal orders did not deprive District Court of jurisdiction; (2) statute precluding court jurisdiction to review any judgment regarding granting of relief under statute governing adjustment of status did not deprive District Court of jurisdiction; (3) District Court had jurisdiction under mandamus statute; and (4) INS would be required to process aliens' applications.

Aliens' motion granted; INS's motion denied.

**1. Aliens ⚖54.3(1)**

Statute granting district courts jurisdiction over "all causes brought by the United States that arise under the provisions of this subchapter" did not provide jurisdiction over suit against United States, Immigration and Naturalization Service (INS), and INS District Director. Immigration and Nationality Act, § 279, 8 U.S.C.A. § 1329.

**2. Aliens ⚖54.3(1)**

Statute precluding court jurisdiction to hear claim by alien arising from decision or action by Attorney General to commence proceedings, adjudicate cases, or execute removal orders did not deprive District Court of jurisdiction over aliens' suit for mandamus and declaratory judgment seeking to compel Immigration and Naturalization Service (INS) to process their applications for adjustment of status pursuant to Diversity Immigrant Visa Program, inasmuch as suit did not involve any specific steps in deportation process or any aspect of deportation process at all. Immigration and Nationality Act, § 242(g), 8 U.S.C.A. § 1252(g).

**3. Aliens ⚖54.3(1)**

Statute precluding court jurisdiction to review any judgment regarding granting of relief under statute governing adjustment of status did not preclude district court jurisdiction over aliens' suit for mandamus and declaratory judgment seeking to compel Immigration and Naturalization Service (INS) to process their applications under Diversity Immigrant Visa Program, inasmuch as aliens had neither been granted nor denied relief, and INS simply failed to act, as opposed to refusing or deciding not to review applications. Immigration and Nationality Act, §§ 242(a)(2)(B)(i), 245, 8 U.S.C.A. §§ 1252(a)(2)(B)(i), 1255.

**4. Mandamus ⚖3(8), 73(1)**

District court had jurisdiction over aliens' mandamus seeking to compel Immigration and Naturalization Service (INS) to process their applications for adjustment of status pursuant to Diversity Immigrant Visa Program, inasmuch as aliens had right to adjudication within reasonable time, INS had non-discretionary duty to issue decision on applications within reasonable time, and waiting for removal proceedings and raising claims before Immigration Judge (IJ) would not be adequate remedy. Immigration and Nationality Act, § 245, 8 U.S.C.A. § 1255; 28 U.S.C.A. § 1361.

**5. Aliens ⚖54(1)**

The statute providing that the Attorney General may adjust an alien's status to that of a lawful permanent resident provides a right to an adjudication within a reasonable time. Immigration and Nationality Act. § 245, 8 U.S.C.A. § 1255.

**6. Aliens ⚖54(1)**

Immigration and Naturalization Service (INS) would be required to process aliens' applications for adjustment of status pursuant to Diversity Immigrant Visa Program, where their applications had been pending for over two years, for 19 months since alien refiled his fingerprint card, and over a year since his fingerprints cleared, and where, although INS had

made some efforts to comply with earlier District Court order requiring adjudication of the applications, none of the responsible parties had coordinated their efforts to ensure that order could be implemented. Immigration and Nationality Act, § 245, 8 U.S.C.A. § 1255.

---

James V. Noonan, James V. Noonan & Associates, Chicago, IL, Jeffrey Grant Brown, Chicago, IL, for Plaintiffs.

James G. Hoofnagle, United States Attorney's Office, Chicago, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

GETTLEMAN, District Judge.

On September 23, 1998, plaintiffs Teodor and Lelia Paunescu filed a complaint for mandamus and declaratory judgment against the Immigration & Naturalization Service, District Director Brian Perryman and the United States of America seeking to compel defendants to immediately issue all appropriate documents and take all appropriate action to execute and process plaintiffs' applications under the 1998 Diversity Immigrant Visa Program, and to grant plaintiffs legal permanent residence through an adjustment of status. The parties have filed cross-motions for summary judgment.

## BACKGROUND

Teodor entered the United States in August 1995 on an F–1 Student Visa as a student at the University of Illinois. On August 19, 1997, he was appointed to the position of Graduate Teaching Assistant for the 1997–98 term. Lelia entered the United States on July 10, 1997, as a derivative spouse of Teodor. On July 29, 1997, Teodor was selected as a winner under the Fiscal Year 1998 Diversity Visa Lottery Program. Pursuant to instructions with the notification, plaintiffs applied for visas. Enclosed with those applications were the required fingerprint cards. The Department of Justice received plaintiffs' applications on November 5, 1997. The INS then

scheduled plaintiffs' visa interview on February 23, 1998. At that interview Teodor was told that his fingerprint card had been rejected by the FBI and that he was to go to an INS application support center to resubmit his fingerprints. He alleges that he was also told that absent the fingerprint problem his application would have been approved. That very same day Teodor delivered a new set of fingerprints via express mail to the interviewing officer. Five months later, on July 24, 1998, Teodor received a form letter informing him that his fingerprints had not yet cleared, without specifying any reason. The form letter contained the box to check if new fingerprints were required to be submitted. That box was not checked.

On September 18, 1998, just twelve days before the fiscal year ended, the INS directed plaintiffs to go to its office in Chicago. Teodor did so on September 21, 1998, and was informed that he had to submit a third set of prints. He immediately traveled to the INS support site in Hammond, Indiana and submitted his third set of fingerprints.

By September 23, 1998, plaintiffs, still without visa numbers, filed the instant action and moved for preliminary injunctive relief. On September 25, 1998, after a hearing, the court ordered defendants to "immediately complete adjudication of the applications for adjustment status" for both plaintiffs, without delay and by no later than September 30, 1998. The court order acknowledged, however, that the INS's ability to comply was contingent upon a favorable return of Teodor's fingerprints from the FBI and the final processing and issuance of visa numbers to plaintiffs by the Department of State on or before September 30, 1998.

The FBI failed to return Teodor's prints by the end of fiscal year September 30, 1998, leaving plaintiffs without visa numbers despite having fully complied with all requirements. In November 1998, plaintiffs moved for a rule to show cause, seeking to compel defendants to demonstrate

why they failed to execute and process plaintiffs' adjustment of status. Defendants moved to vacate the court's September 25, 1998 order, contending that the court did not have jurisdiction to consider plaintiffs' request. The court concluded that it had jurisdiction and denied defendants' motion to vacate. The court also denied plaintiffs' petition for a rule to show cause, stating that the relief plaintiff requested could not be granted on the limited record before the court.

The parties subsequently filed cross-motions for summary judgment. Plaintiffs once again ask the court to order defendants to complete the processing of plaintiffs' adjustment of status. Plaintiffs also argue in their motion that the court has the authority to direct defendants to adjust their status and issue them visas. Defendants renew their argument that the court does not have jurisdiction over the instant matter, and also contend that plaintiffs have not sustained their burden to invoke mandamus jurisdiction.

## DISCUSSION

[1] Plaintiffs assert in their complaint that this action arises under 8 U.S.C. § 1329, 28 U.S.C. § 1331, and 28 U.S.C. § 1361.[1] In their cross-motion for summary judgment, defendants argue that the court does not have jurisdiction over the instant case. Defendants reiterate the argument they made in their motion to vacate that various sections of the INA, specifically 8 U.S.C. § 1252(g) and § 1252(a)(2)(B), deprive the court of jurisdiction. Defendants also argue that plaintiffs have not made a showing sufficient to allow the court to assume jurisdiction under the mandamus statute, 28 U.S.C. § 1361.

### A. Section 1252(g)

[2] The court once again rejects defendants' argument that § 1252(g) applies in the instant case. As the court explained in

1. The court notes as an initial matter that § 1329 does not provide jurisdiction in the instant case. Section 1329 grants district courts jurisdiction over "all causes

its order denying defendants' motion to vacate, the Supreme Court in *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999) ("*AADC*"), held that § 1252(g) applies narrowly to the Attorney General's decision to "commence proceedings, adjudicate cases, or execute removal orders." If "[i]t is implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings." *id.* 525 U.S. 471, 119 S.Ct. at 943, it is even less plausible that the mention of these discrete events was a shorthand way of referring to all claims brought in immigration matters. Because this case does not involve any of the "specific steps in the deportation process," *id.* 525 U.S. 471, 119 S.Ct. at 944 n. 9, or any aspect of the deportation process at all, § 1252(g) does not apply. *See Russell v. INS,* 1999 WL 675255, at *2 (N.D.Ill. Aug. 24, 1999) ("This case challenges denial of a visa petition, and the INS is not trying to deport Plaintiff; thus, this case does not fall under the ambit of the IIRIRA.").

### B. Section 1252(a)(2)(B)

[3] The remainder of defendants' jurisdictional arguments rest primarily on an issue the court has already decided in plaintiff's favor. In its March 15, 1999, order, the court held that plaintiffs' request was a ministerial, rather than a discretionary, decision. Defendants continue to contend, however, that the relief requested in the instant case implicates the Attorney General's discretion. Defendants argue that plaintiffs are complaining about the Attorney General's "decision" not to adjudicate an application for adjustment of status. Defendants suggest that this "decision" was made pursuant to 8 U.S.C. § 1255, which governs adjustments of status, and argue that therefore, 8 U.S.C.

brought by the United States that arise under the provisions of this subchapter" but does not provide jurisdiction for suits against the United States or its agencies or officers.

**900**            **76 FEDERAL SUPPLEMENT, 2d SERIES**

§ 1252(a)(2)(B)(i) deprives this court of jurisdiction.

Section 1252(a)(2)(B) is entitled "Denials of discretionary relief." Subsection (i) of this section reads, "no court shall have jurisdiction to review . . . any judgment regarding the granting of relief under § 1255." 8 U.S.C. § 1252(a)(2)(B)(i). Defendants contend that the broad language "any judgment" means that this court does not have jurisdiction to "review" the Attorney General's refusal to entertain plaintiffs' applications. This argument is flawed in several respects. Subsection (i) clearly falls under a section of the statute that discusses *denials* of relief. Were plaintiffs contending that they had been denied relief, this court likely would not have jurisdiction over their claims. *See, e.g., Diallo v. Reno,* 61 F.Supp.2d 1361, 1367 (N.D.Ga.1999) ("8 U.S.C. § 1252(a)(2)(B)(i) precludes judicial review of a § 1255 denial of adjustment of status"); *Cruz v. INS,* 871 F.Supp. 1049, 1052 (N.D.Ill.1995) (holding that the plaintiff was not entitled to judicial review of a denial of adjustment of status) (citing *Massignani v. INS,* 438 F.2d 1276 (7th Cir.1971)). Because plaintiffs have neither been denied nor granted relief, § 1252(a)(2)(B)(i) does not bar jurisdiction.

Moreover, even reading the language of § 1252(a)(2)(B)(i) broadly, plaintiffs are not asking this court to review any discretionary judgment regarding the granting of relief. Plaintiffs attempt to analogize this situation to the "deferred-action" decisions the INS formerly made in deportation cases (discretionary decisions to withhold or terminate deportation). The evidence demonstrates that the INS did not decide to defer action on plaintiffs' applications. Nor do plaintiffs contend that defendants refused to entertain their applications. *See, e.g., Alvidres–Reyes v. Reno,* 180 F.3d 199 (5th Cir.1999) (holding that, in the deportation context, § 1252(g) deprived the court of jurisdiction to compel the Attorney General to entertain the plaintiffs' applications for suspension of deportation) (cited by defendants). Defendants admit that they began entertain-

ing plaintiffs' applications. Moreover, Teodor attests in his affidavit that defendants' agent went so far as to tell plaintiffs that their applications would have been approved on that date if Teodor's fingerprints had cleared, a statement defendants neither admit nor deny. From this point forward, however, defendants simply failed to do anything at all. This was not a "decision," let alone a discretionary call. Plaintiffs do not ask this court to "review" a governmental action, but to examine and rectify a gross inaction.

### C. Mandamus Jurisdiction

[4] Because none of the cited provisions of the INA bar jurisdiction, the court must determine whether it has jurisdiction under the mandamus statute, 28 U.S.C. § 1361. This act grants district courts "jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." Mandamus jurisdiction can be invoked when: (1) the plaintiff has a clear right to the relief sought; (2) the defendant has a clear duty to perform; and (3) no other adequate remedy is available. *Blaney v. United States,* 34 F.3d 509, 513 (7th Cir.1994). The court will address each of these factors.

[5] Under 8 U.S.C. § 1255, the Attorney General may adjust an alien's status to that of a lawful permanent resident if the alien applies for such an adjustment and is eligible for a visa, and if a visa is available to him at the time his application is filed. Defendants contend that plaintiffs do not have a clear right to have their applications adjudicated because all decisions related to the processing of an application for adjustment of status are discretionary. The court agrees with Judge Grady that § 1255 "provide[s] a right to an adjudication . . . within a reasonable time." *Agbemaple v. INS,* 1998 WL 292441, at *2 (May 18, 1998).

Defendants also contend that the INS does not have a clear duty to issue a decision on an adjustment of status at all, let alone to issue such a decision before the end of the fiscal year. *See Diallo*, at 1367–68. As discussed above, the court rejects defendants' argument that all decisions related to the processing of an application for adjustment of status are discretionary. The court does not mean to suggest that defendants have a duty to adjudicate applications on a "first-come, first-served basis." *See, e.g., Rahman v. McElroy*, 884 F.Supp. 782, 786–87 (S.D.N.Y.1995). Defendants nevertheless had a non-discretionary duty to issue a decision on plaintiffs' applications within a reasonable time. *See Yu v. Brown*, 36 F.Supp.2d 922, 931 (D.N.M.1999) ("All other courts addressing this question have held that INS has a *non-discretionary* duty to process applications for LPR status as well as all other immigration applications.") (emphasis added) (citing cases); *id.* at 932 (holding that the INS "owe[s] Plaintiffs a non-discretionary duty to complete processing of Plaintiffs' [LPR] applications in a reasonable time."); *see also* 2 Am.Jur. Administrative Law § 379 ("Even though agency action may be subject to no explicit time limit, a court may compel an agency to act within a reasonable time."). *But see Diallo,* at 1368–69 ("The decision of how to handle and investigate [a plaintiff's] application for adjustment of status and the District Direcotr's denial of that application are clearly discretionary acts.").

Finally, defendants contend that plaintiffs have an adequate remedy: They can wait until the government institutes removal proceedings against them and raise their claims before the Immigration Judge. The court agrees that this may be the only remedy for an alien who is denied an adjustment of status. *See, e.g., Cruz,* 871 F.Supp. at 1052. But, as discussed above, the failure to adjudicate an application is different from the denial of an application. Defendant attempts to analogize the instant case to *Russell v. INS,* 1999 WL 675255 (N.D.Ill. Aug. 24, 1999), in which

the plaintiff asked Judge Pallmeyer to issue an order of mandamus against an AAU who had allowed nineteen months to elapse without issuing a decision on Russell's case. Judge Pallmeyer held that the plaintiff had an adequate remedy: to wait until the judge issued his opinion. Following *Russell,* defendant argues that plaintiffs should simply wait until their applications are adjudicated. This suggestion is misguided. The character of the adjudication on Russell's application would not change no matter how long the AAU sat on the case. But the character of the adjudication on plaintiffs' applications changed forever on September 30, 1998 (in violation of this court's order), and this court alone can remedy plaintiffs' injury.

Judge Vasquez in the District of New Mexico found that the plaintiffs in *Yu v. Brown,* 36 F.Supp.2d 922 (D.N.M.1999), had established mandamus jurisdiction under nearly identical circumstances to those arise in the instant case. One of the plaintiffs in *Yu* had submitted her application for legal permanent residence two and a half years earlier. She later learned that her fingerprints had not cleared and refiled her fingerprint card. Judge Vasquez concluded that the defendants, including the INS, had a non-discretionary duty to process the plaintiffs' applications defendants, including the INS, had a non-discretionary duty to process the plaintiffs' applications and held that the defendants had breached this duty by failing to act on plaintiff Yu's application within a year of the time she refiled her fingerprint card. *See id.* at 933.

The court concludes that it has mandamus jurisdiction over the instant case. Plaintiffs have a right to have their applications for adjustment of status adjudicated, defendants have a duty to perform this adjudication within a reasonable time, and no other remedy is available to plaintiffs. The court therefore proceeds to a consideration of the merits.

[6] The Department of Justice received plaintiffs' applications on November

5, 1997, over ten months before the end of the fiscal year. Teodor attests that at plaintiffs' February 23, 1998, visa interview, they were informed that their applications were complete but for their fingerprint card. Defendants do not present any evidence to counter plaintiffs' claim that by February 23, 1998, they would have been eligible for an adjustment of status as soon as Teodor's fingerprints cleared. Over the next seven months plaintiffs made repeated efforts to force defendants to perform the one ministerial act that would complete their applications. For seven months defendants were on notice that plaintiffs' fingerprints had not cleared and were in wilful derogation of their duty to process plaintiff's applications.

Defendants contend that they attempted to comply with the court's September 25, 1998, order before the end of the fiscal year. According to a memo written by defendants' counsel on September 24, 1998, defendants planned to send the September 25, 1999, order to the FBI and to ask the FBI to expedite Teodor's fingerprints. Jeffrey Gorski, a lawyer employed by the Department of State's Visa Office, attests that on September 30, 1998, the Assistant United States Attorney asked the Visa Office to issue a visa to the INS to allow plaintiffs' adjustment of incomplete, presumably because the FBI had not yet cleared Teodor's prints. The FBI's report shows that it did not receive Teodor's fingerprints until October 7, 1998. On October 8, 1998, Teodor's fingerprints cleared.

Plaintiffs were the victims of a bureaucratic nightmare. Although defendants have demonstrated that they made some efforts to comply with this court's September 25, 1999, order, the evidence demonstrates that none of the responsible parties coordinated their efforts to ensure that this court's order could be implemented. Plaintiffs should not be penalized for the government's misfeasance.

Plaintiffs' applications have been pending for over two years since they were first filed, for 19 months since Teodor refiled

his fingerprint card, and for over a year since his fingerprints cleared. This court holds that defendants' failure to perform a non-discretionary duty within a reasonable time deprived plaintiffs of visas until September 30, 1998, plaintiffs had a right to have their applications adjudicated. Now that Teodor's fingerprints have cleared, plaintiffs are entitled to the visas they would have received but for defendants' failure to timely process their applications.

The court emphasizes that the instant case differs from cases in which immigrants who fail to timely apply for naturalization or citizenship and are later denied citizenship ask courts to use their equitable powers to reverse the denial. See, e.g., INS v. Pangilinan, 486 U.S. 875, 108 S.Ct. 2210, 100 L.Ed.2d 882 (1988). The aliens requesting naturalization in Pangilinan did not take affirmative steps to be naturalized before the expiration of the statute under which they were eligible for naturalization. See id. at 880, 108 S.Ct. 2210. The Ninth Circuit nevertheless reversed the district court decision and granted the aliens citizenship. It was in this context that the Supreme Court, reversing the Ninth Circuit, held: "[T]he power to make someone a citizen of the United States has not been conferred upon the federal courts, like mandamus or injunction as one of their generally applicable equitable powers." Id. at 883–84, 108 S.Ct. 2210. The court reasoned that once the statute expired, the aliens in Pangilinan no longer qualified for citizenship, and the Ninth Circuit was bound to adhere to this Congressional mandate. See id. at 883–84, 108 S.Ct. 2210. Plaintiffs in the instant case, in contrast, both timely applied for adjustment of status and demonstrated to the INS investigating officer's satisfaction that, with the exception of the ministerial fingerprint clearance, they qualified for the adjustment they requested. Defendants did not deny plaintiffs' applications; they simply declined to finish processing them. The writ of mandamus confers upon

court the power to compel defendants to perform the duty they owe to plaintiffs.

Defendants argue that they do not have a legal duty to issue plaintiffs visas because the State Department has no legal authority to issue a visa under the FY 1998 Diversity Immigrant Visa Program.[2] Other courts have ordered the INS and the State Department to procure visa numbers after the end of a fiscal year   In *Marcetic v. INS*, 1998 WL 173129 (N.D.Ill. April 6, 1998), Judge Moran ordered the INS "to complete all remaining process of [a] plaintiff's adjustment of status." *Id.* at *2. Defendants attempt to distinguish *Marcetic*, arguing that because an Immigration Judge had already granted the plaintiff in that case legal permanent residence, Judge Moran's order did not implicate the Attorney General's discretion to adjudicate residence. Judge Moran's order did not implicate the Attorney General's discretion to adjudicate an adjustment of status application.   This court has already found, however, that defendants owe plaintiffs a non-discretionary duty to complete the processing of their applications.   Plaintiffs are in the same position as the plaintiff in *Marcetic:* Their applications would have been complete and they would have received visas but for defendants' error.

The court therefore follows *Marcetic* and orders defendants to process plaintiffs' applications and to grant plaintiffs all relief to which they would have been entitled had defendants processed their applications in a timely fashion.   Accordingly, the court denies defendants' motion for summary judgment and grants plaintiffs' motion for summary judgment.



---

2.  Defendants also argue that the State Department is not a party to the instant case. Throughout this case, defendants have tried to deftly transfer blame and responsibility from one governmental entity to another   The

---

INDUSTRIAL HARD CHROME, LTD.,
IHC Limited Partnership, and Bar
Technologies, L.L.C., Plaintiffs,

v.

HETRAN, INC. and Global Technology,
Inc., Defendants.

No. 99 C 1716.

United States District Court,
N.D. Illinois,
Eastern Division.

Dec. 2, 1999.

Machine buyer and its alleged assignees sued seller and surety of sales agreement between buyer and seller, asserting claims under Illinois law for breach of sales contract, breach of implied warranty of use for particular purpose, breach of express warranty, breach of surety contract, and breach of implied warranty of merchantability. Seller and surety moved to dismiss for failure to state claim. The District Court, Alesia, J., 64 F.Supp.2d 741, granted motion in part and denied in part. After buyer filed amended complaint, defendants again moved to dismiss. The District Court held that: (1) alleged assignees stated claim of third party beneficiary status as to sales contract; (2) one assignee stated claim for third party beneficiary status under surety agreement, while other assignee did not; (3) buyer alleged performance of its obligations under sales contract; and (4) buyer alleged breach of implied warranty of use for particular purpose.

Motion granted in part, denied in part.

1. Contracts ⚷187(1)

While third-party beneficiary of contract does not need to be specifically

court will not allow defendants to play this shell game.   The INS, the FBI, and the State Department are all arms of the United States of America, a defendant in the instant case.